## MEISEL *v.* WELLES.

107  453
108  125

1. ESTOPPEL—WHAT CONSTITUTES.
   To constitute an equitable estoppel, the party must have been misled to his prejudice, by conduct well calculated to induce the action taken.

2. SAME.
   Defendant, having purchased certain exempt property from his debtor, told plaintiff, another creditor, upon inquiry, that he had taken the goods on attachment. Plaintiff thereupon went to the town where the debtor was engaged in business, several miles distant, and procured from him an assignment of his right of exemption in the goods. *Held*, in trover for the property, that, as defendant's statement was not of a nature to induce plaintiff to go to such place, and as plaintiff parted with no new consideration and lost no rights after reaching there, and was advised of defendant's claim before bringing suit, defendant was not estopped to claim title under his purchase.

Error to Arenac; Sharpe, J. Submitted December 4, 1895. Decided December 17, 1895.

Trover by Herman Meisel and another against Arthur H. Welles and another. From a judgment for defendants, plaintiffs bring error. Affirmed.

*Frank S. Pratt*, for appellants:

An alleged purchaser of goods, who causes an execution to be levied upon them as the property of the vendor, is estopped from claiming the goods in any other way than by virtue of such levy.    Herman, Estop. § 977; *Smith* v. *Taylor*, 14 La. Ann. 663; *Drew* v. *Kimball*, 43 N. H. 282; *Field* v. *Langsdorf*, 43 Mo. 32.

Defendants, by their words, acts, and conduct, having led plaintiffs to believe that the goods belonged to Hagley at the time at which they now claim they themselves were the owners, and having thus induced plaintiffs to incur further expenses in trying to collect or secure their claim against Hagley, are now estopped from claiming the goods as their own.    *Morrill* v. *Mackman*, 24 Mich. 279; *Meister* v. *Birney*, Id. 435; *Wilber* v. *Goodrich*, 34 Mich. 84; *Vanneter* v. *Crossman*, 42 Mich. 465; *Bartlett* v. *Railway Co.*, 82 Mich. 658; *Condon* v. *Hughes*, 92 Mich. 367.

*Mortimer D. Snow*, for appellees:

There can be no estoppel unless a party is misled to his prejudice by the conduct of the person against whom it is set up, and acts are done relying upon conduct calculated to mislead.    *Gorham* v. *Arnold*, 22 Mich. 247; *Palmer* v. *Williams*, 24 Mich. 328; *Crane* v. *Reeder*, 25 Mich. 303; *DeMill* v. *Moffat*, 49 Mich. 125; *Thirlby* v. *Rainbow*, 93 Mich. 164.

Montgomery, J.    The defendants are merchants, and doing business under the name of Welles & Co., in the village of Standish, and have been engaged in that business for a number of years.    Albert Hagley, during the year 1894, and for a number of years previous thereto, was doing business in the village of Omer,—a small village in Arenac county, situated about 10 miles from Standish.    He had a shingle mill there, and was dealing in lumber.    He also was carrying on a small grocery business, but on a very limited scale.    Mr. Hagley was indebted to the defendants in March, 1894, for goods he had purchased from them while conducting his business at Omer.    Defendants began suit in attachment against Mr. Hagley.    The writ was placed in the hands of the

sheriff of Arenac county. This suit was started March 2, 1894. On the same day, Arthur H. Welles, the sheriff, and one Mr. Nerreter went to Omer to see Mr. Hagley in regard to the matter. Shortly after they arrived at Omer, Mr. Welles had a conversation with Mr. Hagley in regard to his indebtedness to defendants, and, during the conversation, purchased the stock of groceries of Mr. Hagley. Mr. Welles said that he had come out there to put an attachment on the lumber and shingles. Mr. Hagley informed Mr. Welles that he had given a mortgage to his father on that property. Mr. Welles then asked him about the goods in the store. Hagley then told Welles that he would let him have the goods in the store, and that Welles could give him credit for the same on his account. Mr. Welles then purchased all of the goods in the store, and was to take an inventory of the goods, and give Hagley credit for the amount, at what the goods cost. After the goods were sold to Welles & Co., Hagley said to Mr. Welles and the sheriff that he was owing some parties in Bay City for groceries, and would like to have the sheriff give him a copy of the attachment, so that he would have an excuse for the parties in Bay City, and could show them that the goods were taken on attachment. The goods were taken from Mr. Hagley's store under the direction of Mr. Welles.

The plaintiffs in this case reside in Bay City, and are engaged in the wholesale grocery business. Hagley was indebted to them for groceries. On the morning of March 2 or 3, 1894, Mr. McDonell, Mr. Meisel, and Mr. Gilbert left Bay City for the purpose of going to Omer to see Hagley. Mr. Gilbert at that time was acting as attorney for plaintiffs. The three men called upon Welles, at Standish, and asked him what the matter was with Hagley; and in reply to that question Mr. Welles told them that Hagley was in a bad fix, that defendants had attached the goods of Hagley, and that defendants' teams were over at Omer for the goods. None of the gentlemen

intimated at the time to Mr. Welles that they intended to purchase any of the stock of goods, or that they were interested in them in any way, or that they intended to seize any of Hagley's goods. After they arrived at Omer, they told Mr. Hagley that, according to the laws of Michigan, he was entitled to an exemption of $250, and persuaded Hagley to sign over to them his right of exemption in said goods. Subsequently, plaintiffs demanded the property of defendants, and, on their refusal to deliver it, brought this action. Before suit was brought, defendants informed plaintiffs that they had bought the property of Hagley. The question of whether there was an actual sale was a controverted one, but as the jury found that there was such a sale, under proper instructions, we treat that as an established fact.

The principal contention of plaintiffs is that, by this action at Standish, defendants estopped themselves from claiming title to the property in question under the sale from Hagley. We do not think the elements of an estoppel are present. We think the statement made by defendant was neither intended to, nor was it in its nature calculated to, induce the action which plaintiffs afterwards took, and when they reached Omer they parted with no new consideration, and refrained from no action which they could otherwise have taken against this or other property of Hagley's. As to this property, it was admittedly exempt from seizure on process, and, before any suit was instituted by plaintiffs, they were notified of the fact that defendants claimed to have bought the goods. But the plaintiffs contend that there was evidence that, if the plaintiffs had been told by defendants that they (defendants) had bought the goods of Hagley, plaintiffs would not have gone to Omer. This is, of necessity, speculative, as the question was not presented to the parties; but, if this is to operate as an estoppel, we ought to be further able to say what would have been the plaintiffs' course as to going to Omer if defendant had said

nothing upon the subject of these goods. As they had started for Omer, it is to be assumed that they would have gone there; and, if this is so, their course in that regard was not changed by anything defendant said. But a further answer to this contention is that there was nothing in the fact that Hagley's stock had been attached, and that it was exempt, which afforded any inducement for plaintiffs to go to Omer. The statement was not calculated to induce such action, but quite the reverse. So far as the plaintiffs' ability to reach the property by process was concerned, either the fact of a sale or an attachment of property not subject to execution would have precisely the same effect. No statement of defendant was of a nature to induce plaintiffs to go to Omer, and, as they parted with no new consideration and did not lose any rights after reaching there, the court rightly held that there was no estoppel growing out of the statement attributed to Welles.

The case of *Pickard* v. *Sears*, 6 Adol. & E. 469, is the leading case on the subject of equitable estoppel, and the rule in that case is stated to be that—

"Where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."

The meaning of the word "willfully," as employed in this connection, was subsequently explained in *Freeman* v. *Cooke*, 2 Exch. 654, where it was said:

"If, whatever a man's real intention may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and did act upon it as true, the party making the representation would be equally precluded from contesting its truth."

In short, as is said by Mr. Herman, in his work on Estoppel (section 754), in commenting upon this case, the

representations are to be regarded as willful when the person making them means them to be acted upon, or if, without regard to intention, he so conducts himself that a reasonable man would take the representation to be true, and believe it was meant he should act upon it. Continuing, this author says:

"Whatever may be the motive, one who so acts or speaks that the natural consequence of his words or conduct will be to influence another to change his conduct is legally chargeable with an intent or willful design to induce the other to believe him, and to act upon that belief, if such prove to be the actual result."

And at section 781 it is said:

"Several things are essential to be made out in order to enforce the operation of this doctrine: (1) That the act or declaration of the person must be willful,—that is, with knowledge of the facts upon which any right he may have must depend, or with intention to deceive the other party; (2) he must, at least, it would seem, be aware that he is giving countenance to the alteration of the conduct of the other, whereby he will be injured if the representation is untrue; and (3) the other must appear to have changed his position by reason of such inducement."

It will be seen that it is of the essence of this rule that, in the absence of an actual intent to induce action by another, the statement must be of a fact the existence of which is calculated to induce action. See *Thirlby* v. *Rainbow*, 93 Mich. 164.

The cases cited by plaintiffs to the point that an alleged purchaser of goods, who causes the property to be levied upon under an execution, is estopped from claiming title by purchase, are cases in which the question arose between subsequent execution creditors and the party guilty of the misleading conduct. A levy of an execution upon property as the property of A., which property is subject to levy, may well be said to be an assertion to other creditors that the property is the property of A.; but in the present case the plaintiffs acted on no such

inference. On the contrary, the property was exempt, and, in the absence of a levy by defendants, would not have been subject to levy at the instance of plaintiffs.

We think that there was no error in the proceeding. The judgment will be affirmed.

LONG, GRANT, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.