## LILLY *v.* TOWNSEND.

ESTOPPEL—WILLS—RECEIPT BY BENEFICIARY.

A beneficiary under a will, who, with an intent to abide by its provisions, has accepted her share of the property thereunder, and has receipted to the executor therefor, is estopped to set up its invalidity, after the latter, in reliance upon her action, has made like settlements with other beneficiaries.

Error to Cass; Coolidge, J. Submitted June 10, 1896. Decided July 21, 1896.

Thomas J. Lilly presented for probate the will of David Lilly, deceased. From an order probating the will, Florence L. Townsend appealed to the circuit, where the will was again sustained. Contestant brings error. Affirmed.

*Osborn, Mills & Master*, for appellant.

*M. L. Howell* and *Coy W. Hendryx*, for appellee.

LONG, C. J. This is a contest over the will of David Lilly, who died March 18, 1894, aged 79 years. The will

was executed January 26, 1894. At his death he left surviving him a widow, and several children and grandchildren. The will was contested on the ground of incompetency of the testator to make a will, and, as claimed by counsel for contestant, also upon the ground that the will as drawn did not express the intent of the testator in the disposition of his property. The testator was a man of considerable means.

The will was drawn by Henry Michael, a justice of the peace, and gives, first, to his wife, Sarah Lilly, the use, income, and occupation of the home farm during her natural life, and also the interest and income of $50,-000 during her natural life. At the death of his wife, the home farm was given to a granddaughter, and another portion of land was given to a grandson, Edward Townsend, when he arrived at the age of 25 years, and after the death of testator's wife. Testator also gave to his son Thomas and daughter Matilda certain portions of land, and certain notes were also given to Matilda. The daughter Florence (the contestant here) was given several portions of land and some notes and mortgages. To three grandchildren he gave $8,000 each; and provided in the eighth clause of the will that after the death of his wife, and the payment of his debts and funeral charges and the legacies, all the rest and residue of his estate, both real and personal, should be given to his five grandchildren, to be divided equally among them. By the ninth clause he appointed Byron Fiero his executor. The will was presented for probate by his son, Thomas J. Lilly.

The proponent produced the parties who were witnesses to the will, who testified to its execution, and that the testator was competent to make it. The will was then offered in evidence, and proponent rested. The contestant produced witnesses who gave evidence tending to show that, at the time of the execution of the instrument purporting to be the will, David Lilly was not competent to make and execute it. Contestant than called

Mrs. Sarah Lilly, the wife of testator, who testified that she and her husband had lived together for 50 years; that she remembered the making of the will. She was then asked:

"I will ask you this question: If, after your husband's death, the various parties in interest in the estate agreed that the will was not an expression of your husband's wishes, and agreed among themselves to take under the law, instead of under the will?"

This was objected to as incompetent, and for the reason that it could not bind the minors, and the executor never assented to it.

"*By the Court:* The expression that the will was not an expression of the deceased, I do not think ought to be used. You can reframe your question.

"*Q.* Did you and all the others in interest sign a paper by which you all agreed—grandchildren, children, and widow—not to take under the will, but to divide the property among yourselves?"

This was objected to upon the same ground, and the court then suggested: "You can ask this witness if the parties signed a paper relating to the will." To this question the witness answered, "Yes, sir;" and the court remarked: "It is possible it may be relevant hereafter. As the case now stands, I doubt whether this testimony is relevant." This ruling of the court was excepted to by contestant. The witness was then asked: "In your opinion, was your husband competent to make an intelligent disposition of his property?" Counsel for proponent objected to this question as incompetent, and upon the further ground that the witness was disqualified by reason of her relationship to the deceased, and that no foundation had been or could be laid for the question. The court sustained the objection, and counsel for contestant excepted.

The contestant thereupon rested, and the proponent thereafter introduced several witnesses, who testified that the testator was competent to make the will. Among

other things, they testified that they had had business transactions with him, some before and some after the execution of the will; that they were acquainted with him, and when they did business with him he acted rationally, and, in their opinion, he was competent to make the will. The executor of the will was then called, who testified substantially that the total of the property inventoried April 6, 1894, footed up to $137,405.37, the personal property amounting to $87,205.37; that certain of the property was turned over to the legatees; that $7,072.45 in notes and mortgages were held by the daughter Matilda, and that she gave him a receipt for such notes and mortgages. It further appears from his testimony that he turned over to Thomas Lilly certain of the property, and took his receipt; to some grandchildren, money and property, and took their receipts; that among those who received property turned over, and receipted for it, was Florence L. Townsend, the contestant in the present suit; that she received from the executor notes and mortgages which were given her by the will, and valued at $1,119.66; that she also receipted to the executor for the lands willed to her, valued at $16,200. The executor testified that she is now in possession of the lands, that he thereafter transferred to the widow the farm willed to her, and that several of the grandchildren have not yet received their legacies.

The executor was asked if the contestant knew that he was paying out these legacies to the heirs, and answered:

"Well, I don't know as to that. She didn't say anything to me about it at any time. She had taken hers, and had possession of the notes and mortgages when we appraised them. I think she knew Mrs. Charles had hers. I think she found out shortly that Gertrude Charles had hers. Florence gave the first receipts, and was the first one settled with under the will. This receipt for the notes and mortgages was given me April 9th. There was no intimation made to me by her—that is, Mrs. Townsend—that she intended to contest the will, until after I had paid Mrs. Charles and her daughter."

On cross-examination the witness testified:

"I think Mrs. Townsend and Mrs. Charles both commenced a contest of the will. [Mrs. Townsend is the only one now contesting.] * * * The payments were made before the notice of appeal. I had turned over the property to Thomas Lilly himself then. I had turned over to Thomas Lilly's children no money."

Mrs. David Lilly testified that she knew her daughter Mrs. Townsend intended to contest the will; that she was with the contestant when Mr. Fiero came to have her sign the receipts, and that the contestant then told him she "did not want to sign the receipts, because she calculated to break the will if she could. He said to sign them; it wouldn't hinder." The contestant also testified to the same statement made by her to the executor, and that she signed the receipts with that understanding. Her testimony also shows that she was in possession of some of the real estate when she gave the receipts, and had been for many years; but some of the notes and mortgages were turned over to her that day. The executor was recalled, and gave evidence tending to contradict contestant's testimony, and testified he did not tell her if she signed the receipts it would not interfere with her contest; and another witness also testified that on this occasion nothing was said by the contestant to Mr. Fiero that she was going to make a contest of the will, and that no reference was made to it.

The contention of the proponent was that contestant, under these circumstances, is estopped from contesting the will. Contestant, however, insists that there was no evidence in the case which would warrant the court in even submitting that question to the jury. The court submitted the question of estoppel, as follows:

"The receipts do not contain an acknowledgment, in express terms, of the satisfaction of her claims under the will; but, as they embrace all the property devised to her by the will, and were given to the executor, they are

*prima facie*—that is, in themselves, without any further explanation or testimony—evidence of accepting the terms of the will. This is liable, however, to be explained or modified by testimony as to the intent and object with which they were signed. If the contestant would not have signed the receipts at the time if she had known the effect and intent of them, and if she did not intend an acceptance of the provisions of the will as to her, and did not notify the executor to the contrary, then she is not estopped from contesting the will. I do not think that an estoppel conclusively follows in this case from the signing of the receipts, if the contestant did not sign them knowingly, intelligently, and designedly, with intent to accept and receive under the terms of the will and according to its provisions, and if she so notified the executor. But if she signed these receipts because she was then satisfied with the will, or because she had made up her mind to accept its provisions, then she is estopped from contesting the will; or, if she signed without knowing that the executor and the heirs would regard it as an acceptance, with a mental reservation and secret intent to contest the will in the future, knowing she had no right to take this property and receipt for it to the executor under the will if she proposed to contest it, then she is estopped."

We think there was some evidence in the case which warranted the court in submitting the question of estoppel to the jury. It is shown that, after the will was presented to the probate court, the executor made settlements with some of the heirs by turning over to them the property specifically bequeathed to them, and paying to one granddaughter an amount of money which, with certain notes and mortgages, made up the amount given her by the will. The contestant was the first one settled with. She took and receipted for all the notes and mortgages which were willed to her, and also for the farm willed to her. After this the executor made settlements with most of the other heirs by delivering up the mortgages and notes and real estate. The contestant knew that some of the other heirs were being settled with. The others might not have settled, but for the fact that the contest-

ant received and receipted for her share of the property. If, under these circumstances, she could appeal from the allowance of the will, and finally succeed in setting the will aside, the executor would be placed in a position where he must account for the estate that came into his hands. He has parted with the most of it in apparent good faith, turning over mortgages and notes and paying out money. He might find it quite difficult to recover the entire estate, and yet be compelled to account for it. Under the charge the jury evidently found that the contestant, when she took her share, intended to abide by the will. She has placed the executor in a position he would not have been placed in if she had not chosen to abide by the will, and to his disadvantage, and possible loss; and in this way he has been misled to his injury. It is the well-settled rule in regard to estoppels *in pais* that the conduct complained of must have induced another to act to his disadvantage, and that his situation in consequence thereof must have changed. *Maxwell* v. *Bridge Co.*, 46 Mich. 282. We think the court, under the circumstances, properly submitted that question to the jury.

The question of the competency of the testator to make the will was fairly submitted to the jury.

The court was not in error in rejecting the testimony of Mrs Lilly, as no foundation had been laid upon which to base an opinion of her husband's competency.

The judgment must be affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, J., did not sit.