MARQUETTE COUNTY SAVINGS BANK *v.* KOIVISTO.

1. FRAUDULENT CONVEYANCES—SALES IN BULK.

The sale of a stock of merchandise in bulk, without a compliance with the statute requiring notice to the creditors of the vendor, and the making of an inventory, renders the vendee liable to the creditors of the vendor as a receiver.[1]  Act No. 223, Pub. Acts 1905.

2. SAME—GOOD FAITH—IGNORANCE OF LAW.

It is immaterial that the purchaser of the stock was ignorant of the requirements of the statute.

3. SAME—ESTOPPEL—WAIVER.

Two years' delay by a creditor, which has not received the statutory notice, does not estop it from acting under the provisions of the "sales in bulk act," unless the purchaser has changed his position in reliance on the conduct of the creditor, even though an oral statement had been made to the creditor that the transfer had taken place.

4. SAME—WAIVER.

A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right.

5. SAME—BANKS AND BANKING—DEPOSIT—PRINCIPAL AND SURETY.

The fact that a bank which holds a note of the vendor failed to set off a deposit of the vendor against it, but permitted him to check it out, does not discharge the vendee from his liability under the statute.

Error to Marquette; Stone, J.  Submitted April 14, 1910.  (Docket No. 95.)  Decided September 27, 1910.

Garnishment proceedings by the Marquette County Savings Bank against Matti Koivisto as garnishee of Adam Kangas.  A judgment for plaintiff on a verdict directed by the court is reviewed by the garnishee on writ of error.  Affirmed.

*C. F. Button* (*M. J. Sherwood,* of counsel), for appellant.

*George P. Brown,* for appellee.

[1] As to statutory requirements on sale of stock of goods in bulk, see note to *Everett  Produce  Co.* v. *Smith* (Wash.), 2 L. R. A. (N. S.) 331; note to *Young* v. *Lemieux* (Conn.), 20 L. R. A. (N. S.) 160.

MOORE, J.  This is an action of garnishment by which the garnishee defendant is sought to be held liable for the debt of the principal defendant to the plaintiff, under the terms of the so-called "sales in bulk act" (Act No. 223, Pub. Acts 1905), which provides that sales of stocks of merchandise, etc., otherwise than in the ordinary course of trade, etc., shall be void as against the creditors of the seller, unless the seller shall make at least five days before the sale a detailed inventory showing the cost price, etc., and the purchaser demands and receives of the seller a certified list, under oath, of his creditors, and shall at least five days before taking possession or paying for stock notify personally or by registered mail, every creditor contained in the list, or of which he has knowledge, of the proposed sale and the price, terms, and conditions thereof. From a judgment in favor of plaintiff the defendant has brought the case here for review.

On the 20th day of February, A. D. 1906, Adam Kangas sold his stock of groceries to the garnishee defendant. The defendant took possession of the stock at once, and has continued the business in his own name.  At the time of this sale the terms of the act were not observed.  The purchase price was $2,000.  The final payment of $192.27 was not made until March 13, 1906.  It is claimed this was about two weeks after the plaintiff had knowledge of the sale.  The plaintiff, however, claims it had no knowledge of the details of the sale.  At the time of the sale Mr. Kangas was a depositor at the plaintiff's bank, and also owed the plaintiff $351.50 upon a note which came due the day of the sale.  The plaintiff's cashier testified that at the time of the sale, and on the opening of business on this day, the deposit balance was $163.12.  In each instance, when the renewal notes were given, the old note was canceled and delivered to the maker.  Both the principal and garnishee suit was commenced in the court below on the 21st day of February, 1908.  The trial judge found that the garnishee defendant did not know that the principal defendant owed the plaintiff's bank any-

thing until demand was made upon him for its payment just prior to the beginning of the suit. He also found that the garnishee defendant was a good-faith purchaser of this stock of goods, except as the sale was affected by the sales in bulk statute. The garnishee defendant offered to prove that at the time of his purchase he knew nothing about this sales in bulk statute, but the court below refused to allow such proof, claiming that the same was immaterial. On the 27th day of February, 1906, the principal defendant paid $151.50 on the note due on the 20th day of February, and gave a new note for the balance of $200 to become due March 22, 1906. On the morning of the 27th day of February, 1906, the principal defendant had on deposit with the plaintiff bank $316.88. On March 28, 1906, the principal defendant paid $100 and the accrued interest upon said note, which became due on March 22, 1906, leaving a balance due the plaintiff of $100, for which indebtedness he gave a new note dated March 22, 1906, to become due in 30 days, which is the note upon which the judgment in the principal case was rendered.

It is the claim of defendant that the sale is not void, but voidable. It is further claimed:

"Our position is that it is the creditor whose debt existed at the time of the sale, who is protected by this statute, and that a creditor who, after knowledge of the sale, wipes out the old debt and accepts part payment from his debtor, and a new obligation for the balance, thus extending the time of payment of his debtor, is not such a creditor as is contemplated by this statute."

It was further claimed that defendant was a good-faith purchaser, as he knew nothing of the statute; that plaintiff should have acted promptly, and not rested on his rights. It is further claimed that, as Mr. Kangas told plaintiff he had sold out to defendant, this accomplished the purpose of the statute. We quote from brief:

"When a creditor receives an oral notice from the purchaser, and if he thinks that this notice is not full enough, we do not think this statute would allow him to wait for

a period of years, and then attack the sale on the ground that the notice was not complete under the statute, but rather that the duty would devolve upon him (the creditor) to demand from the purchaser the particulars of the sale required to make the notice full and complete; and, if the creditor at the time of the notice, or subsequently within a reasonable time, does not ask for such fuller and more complete notice, he must be deemed to have waived the same."

That part of the statute material to the discussion reads as follows:

"SECTION 1. The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or the merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller, transferror or assignor, shall be void as against the creditors of the seller, transferror, or assignor, unless the seller, transferror, assignor, and purchaser, transferee and assignee, shall at least five days before the sale, make a full detailed inventory, showing the quantity and, so far as possible with exercise of reasonable diligence, the cost price to the seller, transferror and assignor of each article to be included in the sale; and unless the purchaser, transferee and assignee demands and receives from the seller, transferror and assignor a written list of names and addresses of the creditors of the seller, transferror and assignor, with the amount of indebtness due or owing to each, and certified by the seller, transferror and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally, or by registered mail, every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof.

"SEC. 2. Any purchaser, transferee or assignee, who shall not conform to the provisions of this act, shall, upon application of any of the creditors of the seller, transferror or assignor become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by

virtue of such sale, transfer or assignment: *Provided, however*, That any purchaser, transferee or assignee, who shall conform to the provisions of this act, shall not in any way be held accountable to any creditor of the seller, transferror or assignor, or to the seller, transferror or assignor for any of the goods, wares, merchandise or fixtures that have come into the possession of said purchaser, transferee or assignee by virtue of such sale, transfer or assignment."

The language of the statute is clear and unambiguous. Its construction has been before this court. In *Spurr* v. *Travis*, 145 Mich. 721 (108 N. W. 1090, 116 Am. St. Rep. 330), its validity was sustained. This decision was cited with approval in *Farrar* v. *Coal Co.*, 149 Mich. 118 (112 N. W. 726). The act was again before the court in *Musselman Grocer Co.* v. *Kidd, Dater & Price Co.*, 151 Mich. 478 (115 N. W. 409); where it was held that the act was valid, and that the garnishee process might be used. The contentions of counsel for defendant which have heretofore been stated are so ably discussed and met by the opinion of the trial judge that we cannot do better than reproduce it here. We quote:

"That Koivisto did not conform to the provisions of said act is very plain. Action has been taken by the plaintiff as a creditor of the seller. This renders Koivisto a receiver, and makes him accountable to the plaintiff, unless the plaintiff has waived its rights, or by its conduct become estopped from invoking this statute. It is clear that if the creditor does not make application, or set the provisions of the statute in motion, then he waives his right. But this plaintiff has acted. When must the creditor move? It is evident that he must act within the five days when the purchaser has conformed to the provisions of the act, for when the purchaser has so acted he 'shall not in any way be held accountable to any creditor, or to the seller for any of the goods that have come into his possession by virtue of such sale.'

"I hold it not material for Koivisto to show that he was ignorant of this law. Suppose that both parties were ignorant of it, would that change their relation to it, or to each other? I think not.

"But it is urged that the plaintiff by its silence for two

years should be held to have waived its rights, and to be equitably estopped from taking these proceedings. It never received the notice contemplated by the statute. It is true that Kangas informed it that he had sold out, and that Koivisto was in possession. It never had notice of the price, terms, or conditions of the sale. It does not seem to me that Koivisto is in a position to invoke the doctrine of an estoppel. He did not pay over his money to Kangas and take possession of the stock relying upon the validity of Kangas' notice to the plaintiff, for he had no knowledge or notice of it. His position has not been injured by this delay of the plaintiff to garnish. Had the plaintiff by its conduct or language induced Koivisto to part with his money, another question would be before us. It is the essence of an estoppel that the person claiming its benefits was induced thereby to do the thing he did. One who has not changed his position in reliance on conduct or statement may not set it up. *State Sav. Bank of Ionia* v. *Montgomery*, 126 Mich. 327 (85 N. W. 879); *Hubbard* v. *Shepard*, 117 Mich. 25 (75 N. W. 92, 72 Am. St. Rep. 548); *Lilly* v. *Townsend*, 110 Mich. 253 (68 N. W. 136); *Maxwell* v. *Bridge Co.*, 46 Mich. 282 (9 N. W. 410). There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up, and does material acts relying upon the conduct well calculated to mislead him. *Murray* v. *Rugg*, 116 Mich. 519 (74 N. W. 878); *Palmer* v. *Williams*, 24 Mich. 328; *De Mill* v. *Moffat*, 49 Mich. 125 (13 N. W. 387); *Meisel* v. *Welles*, 107 Mich. 453 (65 N. W. 289). Had the plaintiff by anything it said or did induced Koivisto to pay over his money, then it could not assert a claim inconsistent with its conduct; but there is no such case before us. Neither do I see how the doctrine of waiver can be invoked by the garnishee. An implied waiver is akin to estoppel *in pais*. It is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. 29 Am. & Eng. Enc. Law (2d Ed.), p. 1091. Bishop on Contracts, at section 792, says:

" 'Waiver, in a general way, may be said to occur whenever one in possession of a right conferred either by law or by contract, and, knowing the attendant facts, does or forbears to do something inconsistent with the existence of the right, or of his intention to rely upon it, in which case he is said to have waived it, and is estopped from claiming anything by reason of it afterwards. *United*

*Firemen's Ins. Co.* v. *Thomas,* 27 C. C. A. 42, 82 Fed. 406 (47 L. R. A. 450).'

"Koivisto did not comply with the provisions of the statute in question. It cannot be said that the plaintiff had full knowledge of all of the facts of this sale, of the price, terms, and conditions thereof. A thousand conjectures might be indulged why it did not act. It may have supposed that the terms of the sale were such that it would be protected. It may have been willing to rely upon the ability and willingness of Kangas to pay it. Would it thereby be precluded from the right to sue Kangas, and garnish anybody who held property as a receiver, and was accountable to it? Certainly not. So it seems to me that Koivisto cannot successfully invoke either the doctrine of estoppel or of waiver.

"I do not think that there was anything in the condition of the bank account of Kangas with the plaintiff which made it the duty of the bank to set off the amount of the note against the deposit indebtedness, for the reason, if none other existed, that the deposit account did not equal the amount of the note indebtedness at maturity at any time. But we may go a step further. Even treating Koivisto as a surety, there would be no such duty upon the bank even had the deposit account been larger. In the well-considered case of *Davenport* v. *State Banking Co.,* 126 Ga. 136 (54 S. E. 977, 8 L. R. A. [N. S.] 944, 115 Am. St. Rep. 68], it was held that the mere fact that a bank which is the owner of a note upon which there is a surety is at its maturity indebted upon general deposit account to the principal upon the note in a sum larger than that due upon the note, and fails to exercise the right to set off the amount of the note against this deposit indebtedness, and allows the deposit to be checked out by such depositor, does not discharge the surety on the note. So, in any view of the case which I am able to take, I think that upon the undisputed evidence the plaintiff is entitled to a verdict in this case."

The judgment is affirmed.

OSTRANDER, HOOKER, McALVAY, and BROOKE, JJ., concurred.