Argued October 29, 1917, affirmed January 15, 1918.

## OREGON MILL & GRAIN CO. *v.* HYDE.*

(169 Pac. 791.)

**Garnishment—Nature of Liability.**

1. A garnishee is liable only because he is indebted to, or has property in his possession belonging to, the debtor, either in fact or in contemplation of law.

   [As to garnishment as satisfaction of the principal debt, see note in 77 Am. St. Rep. 542.]

---

*For a discussion of the question as to remedy of creditors where sale in violation of the bulk sales law, see notes in 39 L. R. A. (N. S.) 374, L. R. A. 1916A, 974.

As to effect of choosing by mistake remedy not legally available, see notes in 8 L. R. A. (N. S.) 144; 22 L. R. A. (N. S.) 1153.     REPORTER.

Fraudulent Conveyances—Bulk Sales.

2. A seller's creditor may garnish goods transferred to a purchaser in violation of the bulk sales law (Sections 6069–6072, L. O. L.), as amended by Laws of 1913, page 537.

Fraudulent Conveyances—Bulk Sales Act—Effect.

3. Under the Bulk Sales Act (Sections 6069–6072, L. O. L.), as amended by Laws of 1913, page 537, making certain sales void as to the seller's creditors, a sale is valid between the seller and purchaser, and is merely voidable at the instance of the seller's creditors.

Fraudulent Conveyances—Bulk Sales—Ratification.

4. A seller's creditor may waive the fraud and ratify a sale in violation of the Bulk Sales Act (Sections 6069–6072, L. O. L.), as amended by Laws of 1913, page 537.

Fraudulent Conveyances—Proceedings Against Garnishee—Estoppel.

5. A judgment creditor's attempt to collect its debt directly from the judgment debtor, etc., *held* not to estop it from proceeding against a garnishee, who had not changed his position because of the creditor's action or statements.

Election of Remedies—What Constitutes.

6. A person commencing a suit in ignorance of substantial facts affording a different remedy, may, upon acquiring such information, adopt the alternate remedy.

Election of Remedies—Mistake as to Remedy.

7. A judgment creditor's right to set aside a sale by the debtor, void under Bulk Sales Act, Sections 6069–6072, L. O. L., as amended by Laws of 1913, page 537, is not precluded by its previous action against the purchaser upon a nonexisting promise to pay the debt involved, since pursuing a fancied remedy does not waive the real remedy.

From Baker: John W. Knowles, Judge.

In Banc.     Statement by Mr. Justice Harris.

Chauncey Kirkpatrick has appealed from a judgment which was rendered against him as garnishee after the issuance of an execution on a judgment that had been obtained by the Oregon Mill & Grain Company, a corporation, against H. G. Hyde who once owned a grocery-store. Hyde purchased goods for his business and became indebted to various wholesalers, including the Oregon Mill & Grain Company. In the early days of 1911, Hyde sold his business and the entire stock of goods, valued at $4,000, to Chauncey

Kirkpatrick, who, in addition to a specified sum to be paid to Hyde, agreed to pay certain creditors who had sold goods to Hyde for use in the business. Hyde gave a bill of sale to Kirkpatrick; and this instrument contains a list of Hyde's creditors to be paid by Kirkpatrick. The name of the Oregon Mill & Grain Company does not appear in the list.

On February 14, 1912, the Oregon Mill & Grain Company commenced an action against Kirkpatrick to recover from him the amount which Hyde owed the corporation, on the theory that Kirkpatrick had agreed to pay Hyde's indebtedness to it. The goods in the store were attached as the property of Kirkpatrick. A trial resulted in a directed verdict and judgment for Kirkpatrick; and upon appeal to this court the judgment was affirmed in an opinion delivered in June, 1913, and reported in 66 Or. 21 (133 Pac. 69), on the ground that the bill of sale constituted the only competent evidence of the terms of sale, and that, since the name of the Oregon Mill & Grain Company did not appear among the names of the creditors given in the bill of sale, the corporation was without competent evidence to prove the agreement alleged by it.

Having failed in its attempt to recover from Kirkpatrick the Oregon Mill & Grain Company began an action against Hyde on September 25, 1913, to recover the price of the goods sold to him by the corporation. This action terminated on January 14, 1914, in a stipulated judgment for $716 against Hyde. An execution was issued on this judgment on January 30, 1914, and a copy of it and a notice of garnishment were left with Kirkpatrick who responded to the notice by certifying on February 20, 1914, that he had nothing in his possession or under his control "of any nature or description belonging to H. G. Hyde." Not being sat-

isfied with the certificate given by Kirkpatrick, the corporation obtained an order, as permitted by Section 303, L. O. L., requiring the garnishee to appear for examination. Written allegations and interrogatories were served upon the garnishee in compliance with Section 315, L. O. L.

In the meantime on February 5, 1914, Hyde had begun a suit against Kirkpatrick to reform the bill of sale by inserting in it the name of the Oregon Mill & Grain Company as one of the creditors to be paid by Kirkpatrick. Because of the pendency of the suit in equity the parties to the garnishment proceeding stipulated on November 5, 1914, that its progress should be stayed until a determination of the suit. A trial of the suit in the Circuit Court resulted in a decree reforming the bill of sale, as prayed for, and a judgment in favor of Hyde for $535.62 which was found to be the amount due from Hyde to the corporation. Upon an appeal to this court we rendered an opinion, reported in 78 Or. 466 (153 Pac. 41, 153 Pac. 488), in November, 1915, setting aside the judgment, reversing the decree and dismissing the suit, on the ground that the demurrer to the complaint should have been sustained because the pleading was not sufficient.

It also appears that on December 5, 1914, Hyde commenced an action against Kirkpatrick to recover $661.77, but subsequently on January 19, 1915, the action was dismissed on the motion of Hyde.

After the termination of the suit in equity, the Circuit Court, on January 18, 1916, heard and overruled a motion which the garnishee had filed against the allegations served upon him in the garnishment proceeding. The governing theory upon which the allegations were framed was that the sale to Kirkpatrick was void as against the Oregon Mill & Grain Company because

made without compliance with the requirement of the bulk sales act and that therefore Kirkpatrick stood in the position of a third person holding Hyde's property. The motion which the garnishee had filed and the court had overruled was directed against those parts of the allegations which referred to the violation of the Bulk Sales Act. The garnishee then returned the allegations and interrogatories with his written answer as directed by Section 316, L. O. L. The answer reiterates the affirmation, made in the certificate, that the garnishee neither owed Hyde any money nor had any property belonging to him. The garnishee refers to the action which Hyde commenced on December 5, 1914, and dismissed on January 19, 1915, narrates all the steps taken from the beginning to the end of the action prosecuted by the Oregon Mill & Grain Company against Kirkpatrick, and recites the entire story of the suit in equity brought by Hyde against Kirkpatrick; and, based upon these facts, the garnishee pleads the defense of former adjudication and also alleges that the Oregon Mill & Grain Company ought to be estopped to claim that the grocery-store belonged to Hyde because by prosecuting the action against Kirkpatrick the corporation elected to treat the store as property belonging to him.

Replying to the answer of the garnishee, the Oregon Mill & Grain Company explains the action which it unsuccessfully prosecuted against Kirkpatrick by averring that it was informed by both Hyde and Kirkpatrick that the latter would pay the debt owing from the former, and that acting upon such information, it pursued a mistaken remedy.

The Circuit Court concluded that a failure to observe the provisions of the Bulk Sales Act operated to void the sale as against the Oregon Mill & Grain Com-

pany and that therefore Kirkpatrick had in his possession property belonging to Hyde, and a judgment for $716 was accordingly rendered against Kirkpatrick in favor of the company.                    AFFIRMED.

For appellant (garnishee) there was a brief over the name of *Messrs. Clifford & Carrell,* with an oral argument by *Mr. Morton D. Clifford.*

For respondent there was a brief and an oral argument by *Mr. Orville B. Mount.*

MR. JUSTICE HARRIS delivered the opinion of the court.

Sections 6069 to 6072, L. O. L., as amended by Chapter 281, Laws 1913, and commonly referred to as the Bulk Sales Act, requires a written statement under oath containing the names and addresses of the creditors of the vendor, directs the giving of notice to such creditors, and provides that a sale of a stock of goods in bulk without complying with the act "shall, as to any and all creditors of the vendor, be conclusively presumed fraudulent and void." The sale by Hyde to Kirkpatrick was the sale of a stock of goods in bulk, and it was made without attempting to comply with the requirements of the Bulk Sales Act. The judgment in the garnishment proceeding is predicated upon the theory that as against the judgment creditor the Oregon Mill & Grain Company, the garnishee Kirkpatrick had in his possession property belonging to the judgment debtor, Hyde. The appeal is presented on the hypothesis that the suit in equity prosecuted by Hyde against Kirkpatrick and the action at law pursued by the corporation against Kirkpatrick constituted (1) an adjudication that Kirkpatrick was not

indebted to Hyde; and (2) an election by the corporation to approve the sale to Kirkpatrick.

1. The right of a judgment creditor to recover from a garnishee depends upon whether the garnishee has property belonging to or owes a debt to the judgment debtor. The garnishee becomes liable to the judgment creditor only because he is indebted to or has property in his possession belonging to the judgment debtor. The garnishee may have in his possession property which (1) is in fact or (2) is in contemplation of law, although not in fact, owned by the judgment debtor. It may be assumed, for the purposes of the instant case, that as between Hyde and Kirkpatrick the latter neither owes nor has in his possession property belonging to the former; and it may also be assumed, but it is not decided, that the court adjudicated in the suit prosecuted by Hyde and in the action maintained by the corporation against Kirkpatrick that the latter did not agree to pay Hyde's debt to the corporation. In brief, in order that the contention of the garnishee may be presented upon a statement of facts most favorable to him it may be assumed that he neither owed Hyde a debt nor agreed to pay Hyde's debt to the corporation; that as between Hyde and Kirkpatrick the latter did not have in his possession any property belonging to the former; and that it has already been determined by a final adjudication that Kirkpatrick did not agree to pay Hyde's debt to the Oregon Mill & Grain Company.

2. The sale of the stock of goods was valid as between Hyde and Kirkpatrick; and, therefore, as between them the latter did not have property which in fact belonged to the former: 12 R. C. L. 525. The statute, however, interposes and provides that as to the creditors of the vendor the sale shall "be conclusively presumed fraud-

ulent and void,'' so that while there may be a change
of possession there cannot be a transfer of title if the
Bulk Sales Act is not complied with, and hence the
vendee holds in his possession property which in con-
templation of law is still the property of the vendor;
and since the vendee has property which in the eyes
of the law belongs to the vendor a creditor of the latter
can attach the property.  If the vendee has sold or dis-
posed of the property he is nevertheless liable to the
creditors of the vendor to the extent of the value of the
property and the proceeds of the sale may be gar-
nished by such creditors, on the theory that the vendee
stands in the position of a trustee who is responsible
to the creditors for the disposition of the property:
*Kohn* v. *Fishbach,* 36 Wash. 69 (78 Pac. 199, 104 Am.
St. Rep. 941); *Owesso Carriage & S. Co.* v. *McIntosh
& Warren* (Tex.), 179 S. W. 257; *Jaques & Tinsley Co.*
v. *Carstarphen Warehouse Co.,* 131 Ga. 1 (62 S. E. 82);
*Schneider* v. *Lee,* 33 Or. 578, 583 (17 Pac. 269); 12
R. C. L. 529. The right of the Oregon Mill & Grain
Company to reach the stock of goods sold to Kirkpat-
rick does not depend upon whether Kirkpatrick had
property which in truth belonged to Hyde; but its right
depends upon whether Kirkpatrick had in his posses-
sion a stock of goods which had been delivered to him
by Hyde without complying with the Bulk Sales Act and
consequently it is  immaterial  whether  Kirkpatrick
owed a debt to or had property which in fact belongs to
Hyde or whether the garnishee in truth agreed to pay
the debt of Hyde or whether it was finally adjudicated
that Kirkpatrick did not agree to pay Hyde's debt to
the Oregon Mill & Grain Company.

3, 4. Although the word ''void'' is used, the plain
meaning of the statute is that a sale is valid as between
the seller and purchaser but it is merely voidable at the

instance of a creditor of the seller: 12 R. C. L. 474, 525; *McGreenery* v. *Murphy,* 76 N. H. 338 (82 Atl. 720, 39 L. R. A. (N. S.) 374). As said by Mr. Justice BURNETT in *Benson* v. *Johnson,* 85 Or. 677 (165 Pac. 1001, 1003), the legislation "vests in creditors a right which when acting for themselves they are at liberty either to assert or ignore"; and since a sale of a stock of goods is merely voidable at the instance of a cred-·itor, the fraud which the law conclusively presumes to exist may be waived and the sale ratified by the creditor: *Bradtfeldt* v. *Cooke,* 27 Or. 194, 201 (40 Pac. 1, 50 Am. St. Rep. 701) ; *Rice* v. *West,* 80 Or. 640, 645 (157 Pac. 1105) ; *Knoop* v. *Kelsey,* 102 Mo. 291 (14 S. W. 110, 22 Am. St. Rep. 777, 779) ; 20 Cyc. 434; 12 R. C. L. 499; but as stated in Bump on Fraudulent Conveyances (4 ed.), Section 456,

"mere notice without any action on the part of the creditor, or mere acquiescence by taking no present measures to interfere with the transfer, does not amount to confirmation, for he can be precluded from assailing the transfer only on the ground of estoppel or agreement; there must be a benefit conferred upon him, or a disadvantage suffered by the grantee such as can bind the conscience of the former or clothe his act with the character of a contract."

It is not pretended that the corporation gave its consent before the sale was made and hence if the company is prevented from attacking the sale it is only because it has confirmed the sale either by acts and declarations which create an estoppel *in pais* or by an election of remedies.

5. Kirkpatrick has not sustained any loss, or suffered any detriment or changed his position by reason of any act or declaration of the corporation; nor has the corporation gained any advantage or benefit by reason of any act done or any declaration made by it. Kirk-

patrick has neither done anything that he would not have done nor omitted to do anything that he would have done except for the acts or declarations of the corporation. Even though the Oregon Mill & Grain Company were until now unknown to Kirkpatrick nevertheless he would have done exactly as he did do. The conduct of the corporation did not work an estoppel *in pais: Marquette County Sav. Bk.* v. *Koivisto,* 162 Mich. 554 (127 N. W. 680).

6, 7. We now come to a consideration of the question of whether the prosecution of the action by the Oregon Mill & Grain Company against Kirkpatrick operated as an election of remedies so as to preclude the right subsequently to resort to garnishment. Election of remedies is defined in 15 Cyc. 252, thus:

"Election of remedies has been defined to be the right to choose, or the act of choosing between different actions or remedies, where plaintiff has suffered one species of wrong from the act complained of. And broadly speaking, an election of remedies is the choice by a party to an action of one of two or more coexisting remedial rights, where several such rights arise out of the same facts; but the term has been generally limited to a choice by a party between inconsistent remedial rights."

See also: *Kearney Milling & Elevator Co.* v. *Union Pacific Ry. Co.,* 97 Iowa, 719 (66 N. W. 1059, 59 Am. St. Rep. 434, 439). An election of remedies is defined in 9 R. C. L. 956

"as the choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts."

The basis of the application of the doctrine, as stated in *Mills* v. *Parkhurst,* 126 N. Y. 89 (26 N. E. 1041, 13 L. R. A. 472, 474),

"is in the proposition that where there is, by law or by contract, a choice between two remedies, which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other."

The same facts may create two or more remedial rights each of which is inconsistent with the other, and all of which exist in a state of suspension until one of them is selected by the person entitled to choose; but when he makes his choice the right chosen is preserved and from that moment becomes the only one available to him, while all the rest are dissolved and cease to exist. Illustrations without number could be given. Our own precedents illustrate the doctrine. If a person is intrusted with chattels with power to sell pledges the property to secure advances made on his own account, the owner can sue him for the value of the property converted or he can sue on the contract; but the owner cannot have both remedies: *Nichols* v. *Gage,* 10 Or. 82, 85. The breach of a contract providing for the conditional sale of personal property gives the seller more than one remedial right; but if he undertakes to recover the price he cannot afterwards change his position and recover the property in specie: *Francis* v. *Bohart,* 76 Or. 1 (143 Pac. 920, 147 Pac. 755, L. R. A. 1916A, 922); *American Process Company* v. *Florida White Pressed Brick Co.,* 56 Fla. 116 (47 South. 942, 16 Ann. Cas. 1054). The rule itself is simple enough although the application of it is sometimes difficult and occasionally confusing; and perhaps as suggested in *Rowell* v. *Smith,* 123 Wis. 510 (102 N. W. 1, 3 Ann. Cas. 773), some of the seeming conflict of judicial opinion arises out of a failure to observe the finer distinctions between the doctrines of estoppel *in pais, res adjudicata* and election of reme-

dies. The question of whether coexisting remedial rights are inconsistent with each other is to be determined by a consideration of the relation of the parties with reference to the right attempted to be enforced: *American Process Co.* v. *Florida White Pressed Brick Co.,* 56 Fla. 116 (47 South. 942, 16 Ann. Cas. 1054); *Capital City Bank* v. *Hilson,* 64 Fla. 206 (60 South. 189, Ann. Cas. 1914B, 1211); *Rowell* v. *Smith,* 123 Wis. 510 (102 N. W. 1, 3 Ann. Cas. 773).

It is not necessary to determine whether the mere commencement of an action to enforce one of two or more coexisting but inconsistent remedial rights operates as an irrevocable selection, although the clear weight of judicial opinion is to the effect that the commencement of a suit or action is an election: *Frisch* v. *Wells,* 200 Mass. 429 (86 N. E. 775, 23 L. R. A. (N. S.) 144); *Conrow* v. *Little,* 115 N. Y. 387 (22 N. E. 346, 5 L. R. A. 693); *Rowell* v. *Smith,* 123 Wis. 510 (102 N. W. 1, 3 Ann. Cas. 773); *Grizzard* v. *Fite,* 137 Tenn. 103 (191 S. W. 969, L. R. A. 1917D, 652); 15 Cyc. 259; 7 Ency. Pl. & Pr. 368. In a few jurisdictions, however, the mere commencement of a suit or action does not prevent the plaintiff from dismissing it and pursuing another remedy: *Johnson-Brinkman Com. Co.* v. *Missouri Pacific Ry. Co.,* 126 Mo. 344 (28 S. W. 870, 47 Am. St. Rep. 675, 26 L. R. A. 840); 9 R. C. L. 961.

The selection of one of two or more coexisting, inconsistent remedial rights is not irrevocable however unless made with a knowledge of the facts out of which such rights arise; and hence if one commences a suit or action in ignorance of the substantial facts which offer an alternate remedy, he may, when informed, adopt a different remedy: *Rehfield* v. *Winters,* 62 Or. 299, 305 (125 Pac. 289); *Kearney Milling & Elevator Co.*

v. *Union Pacific Ry. Co.,* 97 Iowa, 719 (66 N. W. 1059, 58 Am. St. Rep. 434) ; *Zimmerman* v. *Robinson & Co.,* 128 Iowa, 72 (102 N. W. 814, 5 Ann. Cas. 960) ; *Moline Plow Company* v. *Rodgers,* 53 Kan. 743 (37 Pac. 111, 42 Am. St. Rep. 317) ; *Murphy* v. *Hutchinson,* 93 Miss. 643 (48 South. 178, 17 Ann. Cas. 611, 21 L. R. A. (N. S.) 785) ; 15 Cyc. 261 ; 9 R. C. L. 962.   The Oregon Mill & Grain Company excuses the prosecution of the action at law against Kirkpatrick by alleging and offering evidence to show that it was induced to bring the action by statements made by both Hyde and Kirkpatrick. We do not find it necessary to decide whether the excuse offered is sufficient to bring the corporation within the rule which permits a party to surrender the remedial right previously asserted and to adopt another inconsistent right in lieu of the one surrendered, but we shall proceed to inquire whether the Oregon Mill & Grain Company did in fact select one of two or more coexisting, inconsistent remedial rights when it brought the action at law against Kirkpatrick.

The garnishment proceeding arises out of the fact that Hyde owes the corporation and Kirkpatrick has property which in contemplation of law belongs to Hyde and can be applied upon his debt.   When Hyde sold to Kirkpatrick, the corporation confessedly had the right to attach the property purchased by Kirkpatrick but it did not have an independent right to compel Kirkpatrick to pay Hyde's debt because Kirkpatrick had not agreed to pay it.   It must be admitted that the right to recover from Hyde and the right to attach the goods in Kirkpatrick's possession existed when the purchase was completed and that such right of attachment still exists unless defeated by the election of an inconsistent coexistent right.   Kirkpatrick contends and it is here assumed that he never agreed to

pay Hyde's debt and therefore the corporation never at any time had the independent right to compel Kirkpatrick to pay Hyde's debt. The situation presented here then is one where it is conceded that immediately after the sale the corporation had the right it now seeks to enforce, but never at any time had the right it first asserted. In other words, the corporation did not at first assert a right that it did have, but it only asserted a right that it did not have. The corporation was mistaken. There were not in fact or in law two or more rights from which to choose although one remedial right did actually exist. There would be neither justice nor sense in a rule that takes from a person that which he has merely because he claims that which he does not have. Our attention has not been directed to a single adjudicated case involving a state of facts analogous to those presented here and supporting the position taken by the garnishee. If Kirkpatrick had promised to pay Hyde's debt then one of two rights would have been available to the corporation; and a different state of facts would also be presented if Kirkpatrick had been indebted to Hyde for all or a portion of the purchase price and that debt had been attached by the corporation for the payment of Hyde's debt: *Carter* v. *Smith*, 23 Wis. 497. The garnishee in the instant case, however, is arguing that the corporation must lose what all parties are obliged to admit was a once existing right, solely because it asserted a right which never existed at any time. The pursuit of a fancied remedy is not penalized by the loss of a real remedy. The attempt upon the part of the corporation to collect from Kirkpatrick by a direct action against him was the pursuit of a fancied remedy; the right to sue Hyde directly and to attach the property in Kirkpatrick's possession was a real right

which actually existed and, therefore, the prosecution of the action at law against Kirkpatrick was a fancied remedy while the garnishment proceeding is a real remedy.   In the well-considered case of *American Process Co.* v. *Florida White Pressed Brick Co.,* 56 Fla. 116 (47 South. 942, 16 Ann. Cas. 1054), the court uses the following language:

"If in fact or in law only one remedy exists and a mistaken remedy is pursued the proper remedy is not thereby waived.   Where more than one remedy for the enforcement of a particular right actually exists, and such remedies considered with reference to the relation of the parties as asserted in the pleadings are inconsistent, the pursuit of one with knowledge of the facts is in law a waiver of the right to pursue the other inconsistent remedy."

The rule that the assertion of a mistaken remedy does not preclude the enforcement of a real remedy is thoroughly established by the opinions of courts and text-writers: *Powell* v. *Dayton, S. & G. R. R. Co.,* 16 Or. 33, 43 (16 Pac. 833, 8 Am. St. Rep. 251); *Morris* v. *Sheridan,* 86 Or. 224 (167 Pac. 593, 596); *Rehfield* v. *Winters,* 62 Or. 299, 306 (125 Pac. 289); *Capital City Bank* v. *Hilson,* 64 Fla. 206 (60 South. 189, Ann. Cas. 1914B, 1211); *McCoy* v. *McCoy,* 32 Ind. App. 38 (69 N. E. 193, 102 Am. St. Rep. 223); *Bolton Mines Co.* v. *Stokes,* 82 Md. 50 (33 Atl. 491, 31 L. R. A. 789); *Henry* v. *Herrington,* 193 N. Y. 218 (86 N. E. 29, 20 L. R. A. (N. S.) 249, 251); *Rowell* v. *Smith,* 123 Wis. 510 (102 N. W. 1, 3 Ann. Cas. 773); *Fuller-Warren Co.* v. *Harter,* 110 Wis. 80 (85 N. W. 698, 84 Am. St. Rep. 867, 53 L. R. A. 603); *Clausen* v. *Head,* 110 Wis. 405 (85 N. W. 1028, 84 Am. St. Rep. 933); *Zimmerman* v. *Robinson & Co.,* 128 Iowa, 72 (102 N. W. 814, 5 Ann. Cas. 960); *Harrill* v. *Davis,* 168 Fed. 187 (94 C. C. A. 47, 22 L. R. A. (N. S.) 1153); *Agar* v. *Winslow,* 123

Cal. 587 (56 Pac. 422, 69 Am. St. Rep. 84); *Wells* v. *Western Union Tel. Co.*, 144 Iowa, 605 (123 N. W. 371, 138 Am. St. Rep. 317, 24 L. R. A. (N. S.) 1045); *Clark* v. *Heath*, 101 Me. 530 (64 Atl. 913, 8 L. R. A. (N. S.) 144); *Snow* v. *Alley*, 156 Mass. 193 (30 N. E. 691); *Johnson-Brinkman Com. Co.* v. *Central Bank*, 116 Mo. 558 (22 S. W. 813, 38 Am. St. Rep. 615, 625); 15 Cyc. 262; 9 R. C. L. 962; 7 Ency. Pl. & Pr. 366.

The action at law brought by the corporation against Kirkpatrick was decided by this court on June 3, 1913, and a petition for rehearing was denied on July 15, 1913. On September 25, 1913, the corporation commenced the action at law against Hyde. A judgment was obtained against Hyde on January 4, 1914, and Kirkpatrick was served with notice of garnishment on February 10, 1914.

Assuming without deciding that the garnishee could plead laches and that he has sufficiently pleaded it, nevertheless that defense is unavailing because the evidence fails to support it: *Rowell* v. *Smith*, 123 Wis. 510 (102 N. W. 1, 3 Ann. Cas. 773, 778); *Wills* v. *Nehalem Coal Co.*, 52 Or. 70 (96 Pac. 528). The judgment is affirmed.                    Affirmed.