Argued May 25, reversed June 6, 1916.

# RICE v. WEST.*

(157 Pac. 1105.)

**Fraudulent Conveyances—Sales in Bulk—Waiver of Right to Void Sale—Statute.**

1. Where the creditor of sellers of a drug-store, the bulk sales statute (Section 6069, L. O. L.), not having been strictly complied with because the statement furnished the purchaser was not under oath and not given at least five days before the purchase, when notified of the sale in effect consented by saying he would look wholly to the sellers for payment of his account, and waited for two years before making any move to repudiate such approval and void sale, such creditor waived the right to claim the benefits of the statute.

**Fraudulent Conveyances—Sales in Bulk—Liability of Buyer.**

2. The creditor of the sellers of a drug-store, entitled to the benefit of the bulk sales statute, can hold the buyer liable only for such property as was embraced by the statute at the time of the sale.

**Fraudulent Conveyances—Sales in Bulk—Garnishment—Burden of Proof—Judgment.**

3. Under Section 320, L. O. L., limiting the liability of a garnishee to money value of the property of the debtor in his hands, in garnishment proceedings against the buyer by the creditor of the sellers of a drug-store, where it was admitted that the buyer paid $1,600 for fixtures and stock, but there was nothing to indicate the value of either, so that the value of the stock could not be determined, but the Bulk Sales Act, under which the creditor claimed, did not apply at the time of the sale to fixtures, but only to stock, judgment for the creditor for $224.05 could not stand.

[As to remedies of creditor for violation of bulk sales law, see note in Ann. Cas. 1916C, 928.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.    Statement by MR. JUSTICE HARRIS.

Elver L. Rice, doing business under the name of American Standard Jewelry Company, delivered some jewelry to K. C. West and Fare West, who owned and

---

*For authorities passing on the question of remedy of creditor where sale is made in violation of bulk sales law, see note in 39 L. R. A. (N. S.) 375; L. R. A. 1916B, 974. And as to what kind or classes of property are within the operation of the bulk sales statute, see note in 45 L. R. A. (N. S.) 495.

As to effect of statutory requirement on sale of stock of goods in bulk, see note in 2 L. R. A. (N. S.) 331.                    REPORTER.

conducted a drugstore. The Wests afterward sold all
the fixtures and the entire stock of drugs to F. E.
Hume, who did not, however, take over any of the
jewelry. Rice subsequently obtained a judgment
against the Wests, and, having garnished Hume, is
now endeavoring to hold the garnishee liable for the
amount of the judgment on the theory that the sale to
Hume was void because made in violation of the Bulk
Sales Act.

The garnishment proceeding, presented by this ap-
peal, comes here on a record consisting of allegations
and interrogatories made by Rice as required by Sec-
tion 315, L. O. L., an answer by Hume as directed by
Section 316, L. O. L., a certified copy of the judgment
obtained by Rice against the Wests and a certified
copy of the proceedings in the District Court for Port-
land district in Multnomah County, where Rice ob-
tained that judgment. It is set down in the allega-
tions:

"That on or about the seventeenth day of February,
1915, judgment was duly entered in the District Court,
Multnomah County, for Portland district, State of
Oregon, against the defendants for the sum of one
hundred eighty dollars ($180) and fourteen and 15/100
($14.15) dollars costs."

It is also stated in the allegations that a transcript
of the judgment was filed "in the Circuit Court for
Multnomah County"; that after the issuance of an
execution and notice of garnishment, Hume made a
return to the effect that he had no property belonging
to the Wests, notwithstanding the fact that he had pur-
chased "all of the stock of merchandise and fixtures"
without complying with the bulk sales statute.

After denying that a judgment had been rendered
against the Wests in the District Court or that a tran-

script of such judgment was filed in the Circuit Court, Hume answered the allegations by reciting his version of the purchase of the fixtures and stock of drugs.

The answer relates that on December 6, 1912, Hume purchased the fixtures and the stock of drugs from the Wests for $1,600. When the purchase was made Hume obtained a statement of the creditors of the Wests, and he was informed that they owed $180 to the Blumauer-Frank Drug Company, $203 to Woodward, Clarke & Co., and about $14 to Hess & Clark. Hume paid Blumauer-Frank Drug Company $180, and the Wests immediately paid the other two claims. In addition to the stock of drugs the Wests also had a stock of gimcrack jewelry which they told Hume was the property of the American Standard Jewelry Company and had been purchased upon a conditional sale contract requiring the payment of a $30 installment every three months. Shortly after the sale of the fixtures and drugs the Wests "informed said American Standard Jewelry Company of the sale made to this garnishee and said American Standard Jewelry Company replied thereto in effect and substance that they would not recontract with this garnishee concerning the said jewelry stock, and that they (American Standard Jewelry Company) would look" to the Wests "for the payment of the account for said jewelry stock"; and immediately thereafter the Wests "transshipped and delivered the said stock of jewelry to American Standard Jewelry Company."

Supplementing the answer to the allegations the responses to the interrogatories disclose that Hume paid the purchase price in full; that $1,600 was "the value of the stock of drugs and fixtures"; that the statement concerning the indebtedness of the Wests "was not under oath"; that at the time of the purchase "there

was in the store a stock of cheap jewelry claimed to
be owned by American Standard Jewelry Company,
but which they had agreed to sell upon the installment
plan reserving title to themselves at the rate of $30
every three months''; that the American Standard
Jewelry Company ''stated that they would look
wholly'' to the Wests for their account; and afterward
the Wests shipped the stock of jewelry to the American
Standard Jewelry Company. Rice did not reply to
the answer because as his attorney declared in open
court the new matters stated in the answer ''were
true.''

The only evidence offered consisted of a ''transcript
of the judgment recovered by [Rice] the plaintiff
against [Wests] the defendants in the District Court
for Portland, which was filed in the office of the county
clerk of Multnomah County, Oregon,'' together with a
certified copy of all the proceedings had in the action
in the District Court. The transcript of the judgment
received in evidence shows that the action in the Dis-
trict Court was commenced on March 14, 1914, but it
did not bear fruit until February 18, 1915, when Rice
was awarded a judgment against the Wests for $180,
with costs and disbursements taxed at $14.15. The
proceeding against Hume was initiated after the entry
of the judgment against the Wests in the District
Court. After a trial the circuit judge rendered a judg-
ment in favor of Rice in the garnishment proceeding
for $194.15, with costs and disbursements taxed at
$29.90 against Hume, the garnishee, who has appealed.

REVERSED.

For appellant there was a brief over the names of
*Messrs. Carson & Brown* and *Messrs. Emmons & Web-
ster,* with an oral argument by *Mr. John A. Carson.*

For respondent there was a brief and an oral argument by *Mr. S. S. Humphrey.*

MR. JUSTICE HARRIS delivered the opinion of the court.

When the action was commenced in the District Court the relation of debtor and creditor did not exist between Hume and the Wests, because the purchase price had been paid in full, and as between the sellers and the purchaser the latter had become the owner of the property, so that he neither owed the Wests money nor held any of their property. The validity of the judgment which Rice obtained against Hume in the garnishment proceeding must therefore depend upon the Bulk Sales Act and the statutes regulating attachments.

Before proceeding with the discussion it will be necessary to note some of the provisions of the bulk sales statute. Section 6069, L. O. L., makes it the duty of a person when about to purchase a stock of goods in bulk to demand, at least five days before the consummation of the purchase and five days before payment of any part of the purchase price, "a written statement under oath containing the names and addresses of all the creditors of said vendor." Upon receiving the written statement under oath the vendee is required by Section 6070, L. O. L., at least five days before completing the purchase and paying any part of the purchase price, to cause to be notified "each of the creditors of the vendor named in said statement, of the proposed purchase by him * * and whenever any person shall purchase any stock of goods * * without having first demanded and received from his vendor the statement under oath * * and without having also notified or caused to be notified all of the

creditors of the vendor named in such statement, * * such purchase * * shall, as to any and all creditors of the vendor, be conclusively presumed fraudulent and void.''

Rice is not entitled to a judgment against Hume on the facts which Hume asserts and Rice admits. Section 316, L. O. L., requires the garnishee to ''return the allegations and interrogatories of the plaintiff to the court or judge, with his written answer thereto''; and by Section 319 the plaintiff is permitted to reply in such answer, the issues being tried as ordinary issues of fact between a plaintiff and defendant; and if no reply is filed, the answer ''shall be taken to be true and sufficient.'' Rice did not file a reply and consequently the averment made in the answer to the allegations and interrogatories must be deemed to be true. The answer informs us that at the time of the purchase Hume obtained a statement from the Wests which gave the names of the creditors, three in number, with the amount of their claims; and that those creditors have been paid in full. The Wests informed the plaintiff of the sale to Hume, and Rice replied by saying that he would look wholly to the Wests for the payment of the account for the jewelry stock.

1. The Bulk Sales Act was not strictly complied with, because: (1) The statement was not made under oath; and (2) the statement was not given at least five days before the purchase. The purchaser did, however, obtain a statement which contained all the information required by the statute, although the oath was lacking. Even where the statute is strictly complied with, a creditor loses his right to void the sale if he makes no move to protect his claim. Rice was notified, and then in effect consented to the sale by saying that he would look wholly to the Wests for the payment

of his account. Every benefit which the statute has designed for the creditors was made available to Rice, and yet he not only in effect gave his approval to the sale, but he waited for two years before making any move to repudiate such approval and void the sale, and he has therefore waived his right to claim the benefit of the statute. The transaction between Hume and the Wests was characterized by honesty and fair dealing; nothing was concealed from Rice, but, on the other hand, he was informed of the truth; there was no attempt to deceive or defraud; and although the statute was not technically observed, nevertheless Rice was informed of all that he would have known, even though the statute had been literally followed. If the bulk sales statute had been strictly complied with, nevertheless, his own conduct would have precluded him from now calling upon that statute for aid, and by the same token he ought not to be heard to say that a failure to take a formal step in a technical way will relieve him from what would otherwise be a complete waiver on his part.

There is an additional reason for setting aside the judgment against Hume. As the record comes to us there is nothing to show that Rice was a creditor of the Wests at the time of the sale to Hume on December 6, 1912. It is true that one of the allegations made by Rice is to the effect that the Wests owed the plaintiff $180 at the time of the transfer, but it is also true that the answer returned by Hume denies that allegation.

2, 3. Still another reason demands that the judgment be vacated. When the sale was made to Hume the Bulk Sales Act applied to "any stock of goods, wares or merchandise in bulk," but it did not include fixtures: *Lee* v. *Gillen,* 90 Neb. 535 (134 N. W. 278). The amend-

ment of 1913, which includes fixtures, has no application to the instant case because the amendment was enacted after the sale: Chapter 281, Laws 1913. Even though it be conceded that Rice is entitled to the benefit of the Bulk Sales Act, still he can only hold Hume liable for such property as was embraced by the statute. The fixtures not being included by the statute, it follows, therefore, that the stock of drugs was the only property which the garnishee purchased subject to the Bulk Sales Act. Rice cannot hold Hume liable for any amount greater than the value of the stock of drugs because, by the terms of Section 320, L. O. L., the liability of the garnishee is limited to the money value of the property. It is admitted that Hume paid $1,600 for the fixtures and the stock of drugs, but there is not a word in the record to indicate the value of either the fixtures or the stock of drugs, and consequently it is impossible to determine the value of the stock of drugs. The controversy between Rice and Hume is like an ordinary action where the burden rests on the plaintiff to establish a liability before being entitled to ask for a judgment. Before Rice can say that Hume must pay him $224.05, he is required to show that the stock of drugs was worth at least that amount. There is no evidence to support one of the elements necessary for a valid judgment: *Case* v. *Noyes,* 16 Or. 329 (19 Pac. 104); *Smith* v. *Conrad,* 23 Or. 206, 211 (31 Pac. 398); *Williams* v. *Gallick,* 11 Or. 337 (3 Pac. 469); *Caldwell Banking & T. Co.* v. *Porter,* 52 Or. 318, 323 (95 Pac. 1, 97 Pac. 541).

The judgment is reversed.     REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BEAN concur.