Submitted on briefs October 3, reversed and remanded with directions November 7, 1923.

## CASTLEMAN *v.* STRYKER ET AL.

(219 Pac. 1084.)

Pleading—Allegations of Complaint Held Sufficient in Absence of Challenge at a Proper Time.

1. In a garnishment proceeding based on a sale of a drug business by defendant to garnishee and on garnishee's failure to comply with the Bulk Sales Act, allegations by plaintiff as to purchase by garnishee without first having demanded and received from his vendor a statement of creditors *held* sufficient, when considered in connection with interrogatories propounded to the garnishee and in the absence of a proper challenge at the appropriate time.

Fraudulent Conveyances—Sale Without Compliance With Bulk Sales Act Conclusively Presumed Void as to Any and All Creditors of Seller.

2. The sale of a stock of goods and fixtures in bulk without compliance with the Bulk Sales Act is under the direct provisions

---

2. Statutory requirements on sale of stock of goods in bulk, see notes in Ann. Cas. 1917B, 275; 5 A. L. R. 1517; 2 L. R. A. (N. S.) 331; 25 L. R. A. (N. S.) 758; 45 L. R. A. (N. S.) 495.

Applicability of statute relating to sales of stocks of goods in bulk to transfer in payment of a creditor, see note in 12 L. R. A. (N. S.) 174.

Notice to creditors under bulk sales law, see note in L. R. A. 1917F, 230.

of Section 8162, Or. L., conclusively presumed fraudulent and void as to any and all creditors of the seller.

**Fraudulent Conveyances—Notice by Seller After Sale and Payment of Consideration not a Compliance With Bulk Sales Act.**

3. A notice to a creditor of the seller mailed to him by the seller after the sale of a stock of goods and fixtures in bulk and after the consideration has been paid is not a compliance with the Bulk Sales Act, requiring notice to be given by the buyer at least five days before paying or delivering any part of the purchase price.

**Fraudulent Conveyances—Sale in Violation of Bulk Sales Act Valid as Between Seller and Buyer.**

4. A sale made in violation of the Bulk Sales Act is valid as between the seller and buyer.

**Fraudulent Conveyances—Bulk Sales Law is for Benefit of Creditor Only.**

5. The Bulk Sales Act is for the benefit of the creditor only, who may or may not, as he chooses, elect to claim the benefit thereof.

**Fraudulent Conveyances—Creditor Held not to have Waived His Right to Satisfaction of Debt Out of Debtor's Goods in Hands of Purchaser as Garnishee.**

6. Where one selling a stock of goods and fixtures without complying with the Bulk Sales Act wrote his creditor, who held notes for the purchase price of the property sold, that he had agreed to sell to another who was out of town, and that they could get things closed up when he came back, and the creditor thereupon sent the notes to a bank for collection, *held*, that the creditor had not waived his right to have his indebtedness satisfied from the goods in the hands of the last purchaser by way of garnishment proceedings.

From Multnomah: ROBERT TUCKER, Judge.

In Banc.

This is a garnishment proceeding. Upon the trial the Circuit Court made findings and rendered a judgment in favor of the garnishee, C. A. Fryer. From this judgment plaintiff appeals.

The facts relating to the proceeding are substantially as follows: In March, 1919, the plaintiff sold to H. F. Stryker, defendant in the main action, the business, stock and fixtures of a drug-store, located at 129 Killingsworth Avenue, in Portland, Oregon. Stryker thereupon became indebted to the plaintiff, on account of a balance of the purchase price, in the

sum of $3,250, which indebtedness was evidenced by two promissory notes signed by Stryker and his wife, dated March 5, 1919, and March 17, 1919, and each due two years after date. While thus indebted to the plaintiff, the defendant Stryker, on the seventeenth day of July, 1919, sold and delivered the business, stock and fixtures of the drug-store to the garnishee, C. A. Fryer, in bulk, for the consideration of $12,100, and on said date the garnishee, Fryer, paid Stryker on account of the consideration $8,000 cash, and delivered his negotiable promissory note for the balance of $4,100, payable two years after date thereof.

On the same date, at the time of paying the consideration, the garnishee received a bill of sale, upon the back of which was printed an affidavit, which was made by Stryker, in words and figures as follows:

"I, H. F. Stryker, being duly sworn, depose and say that I am the sole owner of the property described in the foregoing bill of sale and that the same is free and clear of liens and incumbrances of every kind and nature at the date of the execution of said bill of sale, and the same have been paid for in full.

"H. F. STRYKER.

"Subscribed and sworn to before me this 17th day of July, 1919.

"W. W. DUGAN, Jr.,
"Notary Public for Oregon."

No other affidavit was demanded or received by the garnishee. There were no creditors of the defendant, Stryker, other than the plaintiff, Castleman. At the time of the transfer of said stock and fixtures the garnishee inquired of his vendor if there were any unpaid claims against the store, and was assured there were none, and he subsequently inquired of some of the wholesale houses with whom the store

dealt, the lessor of the premises in which the store was situated, the telephone company, and the employees of the store, and was informed they had no claims against the store. The garnishee made no inquiry as to the existence of any general creditors of the vendor Stryker, and neither demanded nor received any list of creditors.

Neither the defendant, Stryker, nor the garnishee Fryer notified the plaintiff of the proposed sale and purchase of the drug-store in bulk prior to the consummation thereof, but on the eighteenth day of July, 1919 the day after the sale—the vendor, Stryker, wrote the plaintiff a letter at Enterprise, Oregon, which letter was received by plaintiff two or three days later, and is in words and figures as follows:

"7–18–19.

"Dear Cas:

"I am enclosing savings slip for $559.37, which I put to your account to-day. I figured it this way: five months due to August 5th, $500 and interest to that date $87.50. Out of that $587.50 I had to take $28.13 for an old Chamberlain account that was overlooked. That leaves $559.37. I couldn't find the freight bill on the Chamberlain goods, so had to pay that too.

"I have agreed to make a sale to C. A. Fryer of the business, as I was going behind, and when the thing is settled up I will take up the matter of the balance with you. His business begun yesterday morning but he has to go out of town for some time and we can get things closed when he comes back.                    Yours,

"H. F. STRYKER."

In answer to this letter the plaintiff wrote Stryker, in substance, that he would send the notes evidencing his claim against Stryker to the Bank of Kenton for

collection. Plaintiff did not notify Fryer of his claim against Stryker, until he came to Portland about November, 1919, nor take any steps to assert any claim against the stock and fixtures of the drug-store until after he had put his claim against the Strykers in judgment. About the fifteenth day of September, 1919, Stryker discounted the $4,100 note which he had received from Fryer, to the Aumsville State Bank.

The notes held by plaintiff against Stryker did not mature until March, 1921, but both provided that if the interest was not paid when due, the holder might declare the whole sum of principal and interest due and collectible. Default was made in the payment of the interest, installments due on the 5th and 17th of March, 1920, and on the twenty-second day of March, 1920. Plaintiff instituted action against Stryker and his wife on the notes, and on the thirtieth day of November, 1920, plaintiff was awarded judgment for the amount of the notes, aggregating the sum of $3,955. On this judgment execution was issued on the seventh day of December, 1920, and delivered to the sheriff of Multnomah County, who served a notice of garnishment, together with a certified copy of the execution, on the garnishee Fryer. The notice of garnishment notified the garnishee that the sheriff by virtue of the execution levied upon the stock and fixtures of the drug-store aforesaid as the property of the defendant, Stryker. The garnishee thereupon furnished said sheriff with a certificate to the effect that he had no property in his possession or under his control belonging to the defendants, or either of them. The certificate being unsatisfactory to the plaintiff, an order of court was procured requiring the garnishee to appear before the court to be ex-

amined under oath concerning said certificate, and allegations and interrogatories were served on the garnishee. The garnishee answered the allegations and interrogatories and plaintiff replied. On the day of trial the garnishee filed an amended answer to the allegations, alleging an affirmative defense, to which the plaintiff demurred. The demurrer to the affirmative defense being overruled, plaintiff replied. Upon the issues thus formed this cause was tried.

It was contended by plaintiff that as to him, as a creditor of the vendor Stryker, the sale of the stock and fixtures of the drug-store in bulk was fraudulent and void because the Bulk Sales Act was not complied with, and consequently the stock and fixtures in the hands of the vendee garnishee were subject to the execution as the property of the judgment debtor Stryker.

The court below found the facts substantially as herein set out, and from the facts so found the court concluded, in substance: 1st, That the garnishee had complied with the Bulk Sales Act by demanding and receiving from his vendor a sworn statement to the effect that the stock and fixtures of the drug-store had been paid for in full by said vendor. 2d, That the plaintiff had waived his right to avoid the sale from Stryker to Fryer under the Bulk Sales Act, and had elected to look to the defendants personally for the payment of his claim. 3d, That the garnishee is entitled to judgment to the effect that the sale in bulk in question was valid, and that the garnishee did not have, at the time of the garnishment, any property in his possession belonging to the defendants, or either of them. Judgment was rendered accordingly in favor of the garnishee.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief over the name of *Mr. Nels Jacobson.*

For respondent there was a brief over the names of *Mr. Edward J. Brazell* and *Mr. E. B. Seabrook.*

BEAN, J.—Plaintiff's assignments of error relate in the main to the question as to whether the evidence supports the findings, and whether the judgment entered was the proper conclusion to be reached from the findings of facts made by the court. Plaintiff contends, that there is no evidence or finding to support the conclusion of law that the Bulk Sales Act had been complied with; that there is no evidence or finding to support the conclusion of law that plaintiff had waived his right to avoid the sale in bulk from Stryker to Fryer, and had elected to look only to defendants personally for the payment of his claim; that there is no evidence to support the findings of fact that "plaintiff acquiesced in said sale and never, at any time, asserted any right in said stock or fixtures, or took any action or step to assert any such right, but on the contrary intended to and did look exclusively to defendants personally for payment of his demand"; that plaintiff was entitled to findings to the effect that no attempt was made to comply with the provisions of the Bulk Sales Act, as set forth in findings requested by plaintiff, and was also entitled to have the court find that the goods and fixtures in question were in possession of the garnishee at the time of the garnishment, and were of the value of $12,100, as set out in the ninth finding requested by plaintiff.

It is contended by Fryer, the garnishee, that the affidavit received by Fryer from Stryker before con-

summating the deal was, in effect, a verified statement by Stryker that he had no creditors at all, that when Stryker immediately after the sale wrote to plaintiff at Enterprise, Oregon, and advised him of the sale, but informed him that the sale was not formally made and that as soon as it was consummated he would "take up the matter of the balance with you"; that plaintiff assented to the proposition and, in effect, consented to Stryker's completing the sale and collecting the money, relying upon Stryker's promise to pay him when he got the money; that plaintiff did not make it known to Fryer, the garnishee, that he was a creditor of Stryker until after Stryker had negotiated the $4,100 note, about the middle of September, 1919; that Fryer, the garnishee, in making the sale acted in good faith and without knowledge of any claim of plaintiff against Stryker; that by his conduct the plaintiff waived the benefit of the Bulk Sales Act.

Sec. 8161 et seq., Or. L., commonly known as the Bulk Sales Act, commands that it shall be the duty of every person who shall bargain for or purchase, any goods, wares or merchandise in bulk, or substantially all of the fixtures, or equipment used as described in the act, for cash or on credit, to demand and receive from the vendor thereof,

"at least five days before the consummation of such bargain or purchase, and at least five days before paying or delivering to the vendor any part of the purchase price or consideration therefor, or any promissory note or other evidence of indebtedness therefor, a written statement under oath containing the names and addresses of all of the creditors of said vendor, together with the amount of indebtedness due or owing, or to become due or owing, by said vendor to each of such creditors, and if there be

no such creditors, a written statement under oath to that effect; and it shall be the duty of such vendor to furnish such statement at least five days before any sale or transfer by him of any goods, wares or merchandise, in bulk, or all or substantially all of the fixtures" * *

Section 8162 provides in substance as follows:

"After having received from the vendor the written statement under oath mentioned in Section 8161 the vendee shall, at least five days before the consummation of such bargain or purchase, and at least five days before paying or delivering to the vendor any part of the purchase price or consideration therefor, or any promissory note or other evidence of indebtedness for the same, in good faith notify or cause to be notified, personally or by wire or by registered letter, each of the creditors of the vendor named in said statement, of the proposed purchase by him of such goods, wares or merchandise, in bulk, * * and whenever any person shall purchase any goods, wares or merchandise, in bulk, * * or shall pay the purchase price or any part thereof, or execute or deliver to the vendor thereof or to his order, or to any person for his use, any promissory note or other evidence of indebtedness for said goods, wares or merchandise, or any part thereof, in bulk, or all or substantially all of the fixtures * * without first having demanded and received from his vendor the statement under oath as provided in section 8161, and without having also notified or caused to be notified all of the creditors of the vendor named in such statement, as in this section prescribed, such purchase, sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed fraudulent and void."

There is a preliminary question raised by defendant as to the sufficiency of the allegations and interrogatories of plaintiff served upon the garnishee, Fryer. The plaintiff alleges, in substance, the facts

above stated in regard to the sale of the stock and fixtures by plaintiff to defendant, Stryker, and that a balance of the purchase price, $3,250, and interest thereof was unpaid; that at the time of the sale and transfer of the stock and fixtures by Stryker to Fryer, the garnishee, plaintiff was a creditor of Stryker to the extent of $3,250 and interest; that in such sale the provision of the bulk sale law was not complied with; that Fryer "did not demand and receive" from Stryker at least five days before the consummation of said purchase or prior to the payment of the purchase price therefor, the written statement or affidavit required by the Bulk Sales Act, and as follows:

"and the said C. A. Fryer, garnishee, as the vendee aforesaid, failed and neglected to notify the plaintiff, as such creditor of the said vendor, of his proposed purchase of said stock and fixtures at least five days before consummating said purchase or paying any part of the purchase price; that said C. A. Fryer, garnishee, consummated said purchase without first having demanded and received from his vendor the statement under oath as provided in said act, and without having also notified or caused to be notified the plaintiff, as a creditor of the vendor, as in said act prescribed, and said sale and transfer from said defendant H. F. Stryker to said C. A. Fryer, garnishee, was and is, as to the plaintiff, as such creditor of the vendor, fraudulent and void."

Plaintiff also alleges the fact relating to his judgment against Stryker and the issuance of the execution, and the garnishment of Fryer; also, that C. A. Fryer has in his possession and under his control personal property belonging to the defendant, Stryker, consisting of the stock and fixtures of the drugstore, giving the location, and the proceeds of the sale of such stock of the value in excess of $5,000.

Interrogatories propounded to the garnishee were served, which elicit the facts above stated according to the version of the garnishee. The garnishee alleges in his further and separate answer that on the eighteenth day of July, 1919, the plaintiff was duly notified in writing of the sale of the property in question. The allegations of plaintiff are assailed in this court for the first time on account of the language "demand and receive" contained in the allegations. The same was not challenged by demurrer or motion or otherwise in the trial court.

1. In view of the fact that the failure of Fryer to notify the plaintiff, a creditor of Stryker, prior to the sale in question, which is ordinarily a violation of the Bulk Sales Act, is clearly alleged, and also the fundamental fact that the garnishee had in his possession at the time certain described personal property belonging to the defendant, Stryker, subject to plaintiff's execution against the property of defendant, Stryker, we hold that under the record in this case the allegation taken in connection with the interrogatories were sufficient in the absence of a proper challenge at the appropriate time though the same might be termed a defective statement of a good cause of action. Facts showing a violation of the statute are alleged by Fryer. The testimony, about which there is little controversy, was all introduced without objection on the part of the garnishee as to the facts alleged.

The question presented for determination is whether the testimony sustains the findings of fact and whether the findings support the conclusion made by the trial court. This involves the inquiry as to a compliance with the Bulk Sales Act by Fryer before making the purchase of the stock of drugs and fix-

tures of the Strykers; and if there was such a fail-
ure whether plaintiff waived his right to levy an exe-
cution on the goods as the property of defendant
Stryker. The form of an affidavit printed on the
back of the bill of sale of the chattels, executed by
Stryker to Fryer, which affidavit was sworn to by
Stryker the vendor appears to be for the purpose of
showing that there were no liens or encumbrances
on the property on that date, and to that end it is
stated "that the same have been paid for in full."
It did not inform Mr. Fryer, the purchaser, whether
Stryker had any creditors or not. It did not refer
to that subject at all. It is not for the court to in-
quire in what manner Stryker salved his conscience
over in making the affidavit. From a legal stand-
point it might be claimed that if the goods had been
paid for by Castleman or any one to the wholesale
dealer, the statement quoted would be literally true.
Also Fryer may have claimed that he had paid
Castleman enough for the chattels. It appears there
was litigation between Castleman and Stryker in
regard to the notes of Stryker given plaintiff for
the stock and fixtures. Stryker claimed damages for
more than the amount of the notes in connection with
the sale by Castleman to him. Also, Stryker may
have considered that the notes given Castleman were
in payment of the property. All this is beside the
mark.

It seems to us that Stryker from the beginning of
the transaction, in connection with the sale by him,
intended to do just what the statute was designed to
prevent, viz., commit a fraud upon plaintiff, a credi-
tor. The neglect of Fryer, the vendee, to comply with
the terms of the statute and obtain the specified affi-
davit and also notify Castleman of the proposed sale

prior to the consummation thereof, in accordance with the act, permitted Stryker to succeed for a time in doing as he intended.

The conduct of Mr. Fryer, the garnishee, in making inquiry of wholesale dealers and Fryer's landlord and others, as to whether or not Stryker was indebted to them, while it may be somewhat tardy, indicates Mr. Fryer's good intention, but it does not follow that such acts were a compliance with the statute. These inquiries also show that Fryer was not satisfied with the information contained in Stryker's affidavit. The law does not permit the matter to rest upon the desultory inquiries of different parties as to the creditors of such a vendor, but commands the obtainment of the affidavit and the giving of notice mentioned in the statute at the time and in the manner specified therein.

2, 3. The sale of a stock of goods and fixtures in bulk without compliance with the Bulk Sales Act is conclusively presumed fraudulent and void as to any and all creditors of the vendor: Section 8162, Or. L.; *Oregon Mill & Grain Co.* v. *Hyde*, 87 Or. 163–168 (169 Pac. 791); *Fitzhugh* v. *Munnell*, 92 Or. 47, 48 (179 Pac. 679); *Hartwig* v. *Rushing*, 93 Or. 6–14 (182 Pac. 177); *Williams* v. *J. W. Crowdus Drug Co.* (Tex. Civ.), 167 S. W. 187. After the sale was consummated it appears that Stryker wrote the letter above quoted, which was evidently not for the purpose of notifying Castleman that a sale was about to be made, but for the purpose of satisfying him or lulling him to sleep so he would not interfere for a time. This is shown by the payment of the interest on the notes up to that date so that the notes would not be due. This was after the sale had, in truth, been made, although it was not intended to be so plainly

stated in the letter. A notice to a creditor mailed to him by the vendor after such a sale and after the consideration has been paid, is not a compliance with the Bulk Sales Act requiring notice to be given by the vendee "at least five days before paying or delivering to the vendor any part of the purchase price or consideration thereof, or any promissory note or other evidence of indebtedness for the same": *Stuart v. Elk Horn Bank, etc.,* 123 Ark. 285 (185 S. W. 263, Ann. Cas. 1918A, 268). In *Fitzhugh* v. *Munnell,* 92 Or. 47 (179 Pac. 679), the sufficiency of a seller's affidavit was involved. In that case there was an attempt to comply with the Bulk Sales Act. The affidavit was made by the vendor to the effect that to the best of his belief the names attached were a complete list of the creditors and the amounts now due, "that if any other should be discovered it will be due to faulty memory," and the seller agreed to pay any such claims and be responsible for consequences resulting from the failure to make such payments. This court, speaking by Mr. Justice BURNETT, in 92 Or. 50 (179 Pac. 680), said,

" * * Parties engaged in dealings of that sort must know the law and comply with it. Equally will the court take cognizance of the statute and administer it without burdening the pleadings with averments of conclusions which the law already attaches to such sales. The act contemplates two classes of creditors: One whose claims are due, and the other whose indebtedness is not yet due but is yet to become due or owing. It is imperative that both of these classes be treated in the sworn statement according to the facts in both cases, if both exist, or if there are none such, that the latter fact be stated. The affidavit in question is faulty in that it does not give the address of any creditor, and makes no men-

tion of debts to become due or owing, nor does it state that there are no such creditors. This defect is apparent on the face of the instrument and the plaintiff accepted it at his peril. The hedging statement that 'if any others should be discovered it will be due to the faulty memory or recollection' was practically sufficient to put the plaintiff upon inquiry with a view to getting the accurate statement contemplated by the statute. * * In our view of the sufficiency of the affidavit when measured by the statutory standard, it is not necessary to decide whether the plaintiff knew of the defendants' demand or not. * * In this instance the decision must turn upon the insufficiency of the affidavit apparent on its face. If the plaintiff chose to take such a defective statement, bolstered up as it was by the seller's collateral promise, he must take the consequences. The law plainly says that a transfer of goods in bulk without the vendee's having demanded and received from the vendor the prescribed affidavit shall be conclusively presumed fraudulent and void as to all creditors of the vendor. No other construction can be placed upon the matter when the statement in question is measured by the statutory standard. A contrary decision would defeat the beneficial purpose of the statute."

The case of *Interstate Shirt & Collar Co.* v. *Windham*, 165 Mich. 649 (131 N. W. 102), is in principle much like the case at bar. Plaintiff recovered judgment in Justice's Court against one Foss as principal defendant and Windham as garnishee defendant. Windham appealed to the Circuit Court where a verdict was directed for the plaintiff. The facts in the case were, that the defendant garnishee purchased from Foss a stock of men's furnishing goods. Before doing so he made an inventory of the goods in compliance with the bulk sales law, and demanded of Foss a list of his creditors. Foss advised him that he had no creditors, except his father, who had a lien on his stock to secure a loan of $4,000.

On the day the purchase was made, Foss made and delivered to the purchaser an affidavit to the effect that he was owner of this stock of goods and that it was entirely free of debt, "and that there is no encumbrance thereon excepting a certain chattel mortgage to Jacob A. Foss." The court said:

" * * But counsel argues that this statement was made in that part of the affidavit wherein it stated that 'the stock was entirely free from debt.' That statement might be construed as meaning that there were no liens against the stock, or it might be construed as meaning that the seller had no merchandise creditors. In either event, it is not a statement that he had no creditors. * * We are of the opinion that the affidavit was not sufficient, and the trial court was in error in so holding."

It is contended on behalf of the garnishee that the provision of Section 8162, Or. L., directing the vendee to give notice to each of the creditors of the vendor of the proposed purchase by him and the provision that whenever any person has purchased any merchandise in bulk or paid any part of the purchase price, or delivered to the vendor of any note of any evidence of indebtedness of such merchandise, "without first demanding and receiving from the vendor the written statement under oath as provided in Section 8161 and without having notified or caused to be notified all of the creditors of the vendor named in such statement as prescribed," such sale shall, as to any creditors of the vendor, be conclusively presumed fraudulent and void, does not provide a penalty, or that the sale shall be void in case the affidavit is not demanded and received at least five days prior to the sale, where the affidavit states there is no creditor, but only in case where the vendee is required to notify creditors named in the affidavit

within such time prior to the sale. We are inclined to believe that the language in Section 8162 "without first having demanded and received from his vendor the statement under oath" as provided in Section 8161, is a command that the statement under oath shall not only contain the specifications contained in the former section but shall be demanded and received at the time therein specified. The purpose of the statute is to prevent fraud in the sale of a stock of merchandise or fixtures in bulk, in order to protect creditors, and in this manner to make the matter of such sale known to the parties who have been dealing with the vendor and are his creditors. This may be accomplished not only by the notice required but by information received from mercantile sources. The plain intent of the statute is not to permit hasty fraudulent sales of such stock or fixtures, but the matter should be held in abeyance for at least five days after the negotiations of the sale have been completed. Hence there was failure on the part of Fryer, the vendee, to take the affidavit required by the statute, or to take any affidavit, at least five days before the contemplated sale, or to notify the plaintiff, a creditor of the vendor, Stryker.

In *Moore Dry Goods Co.* v. *Rowe,* 99 Miss. 30 (54 South. 659, Ann. Cas. 1913C, 1213), a case relating to a sale in violation of bulk sales law, the court in an elaboration of its views of the purpose and effect of the statute states the following:

"For example, if a debtor sells a stock of goods in bulk, and the sale is attacked by his creditors, the latter, by simply showing a sale in bulk, made out a *prima facie* case of fraud. This *prima facie* case, if not rebutted on behalf of the purchaser by showing a compliance by the seller and himself with subsections (a), (b) and (c), becomes an absolute presump-

tion of fraud, entitling them to have the sale set aside.''

In the present case the letter written by the vendor, Stryker, to Castleman, a creditor, on the day after the sale was completed cannot supply the notice required by the statute as claimed by the garnishee, Fryer. The statute requires a notice to be given by the vendee at least five days before paying any part of the consideration, or delivering a promissory note, or any evidence of indebtedness thereof. The letter in question, being written after the sale was perfected and the $8,000 paid and the promissory note of $4,100, which is treated by the statute exactly the same as a payment of money, having been delivered, was of no avail. There is also an inconsistency in the claim of the garnishee to rely upon this letter to supply the statutory notice and at the same time contend that he knew nothing of plaintiff's claim.

4, 5. It remains for us to consider whether the plaintiff waived his right to have the indebtedness against Stryker, the vendor, satisfied from the goods in the possession of Fryer, the garnishee. It is a settled principle of law in this state that a sale made in violation of the Bulk Sales Act is valid as between the vendor and the vendee. The act is for the benefit of the creditor only, who may or may not as he chooses, elect to claim the benefit thereof: *Benson* v. *Johnson,* 85 Or. 677 (165 Pac. 1001, 167 Pac. 1014), *Rice* v. *West,* 80 Or. 640 (157 Pac. 1105), and *Oregon Grain Co.* v. *Hyde, supra.* And it is asserted by the garnishee that Castleman did not notify Fryer of his claim against Stryker until after the transfer of the note by Stryker. It should be noticed that the statute does not enjoin any duty upon such a creditor as to informing the vendee of indebtedness against the

vendor. It appears that Stryker, on the day after the sale and the payment and delivery of the note to him by Fryer, wrote to plaintiff at Enterprise, Oregon, informing him that he had deposited $559.37 to Castleman's account for interest and also wrote as follows:

"I have agreed to make a sale to C. A. Fryer of the business, as I was going behind, and when the thing is settled up I will take up the matter of the balance with you. His business begun yesterday morning but he has to go out of town for some time and we can get things closed when he comes back.

"Yours,
"H. F. STRYKER."

Plaintiff answered the letter to the effect that he would send the note evidencing his claim against Stryker to the Bank of Kenton for collection, and did not notify Fryer of his claim against Stryker until after the note given by Fryer to Stryker had been negotiated. Therefore, the garnishee asserts and the trial court appears to have taken the view that Castleman thereby waived his right to look to the goods for satisfaction of his claim, and consented to the sale.

The plaintiff had a right to forward his note to the bank for collection without in any manner being subject to the implication that he waived any of his rights or consented to the sale. The letter written by Stryker was not intended for the purpose of obtaining the consent of Castleman and was not so understood by the plaintiff. Neither is the answer of Castleman, nor the act of sending the note to the bank for collection any evidence of such a waiver or consent.

The plaintiff by pursuing a regular course of business in relation to his notes ought not to be and is

109 Or.—15

not estopped from asserting his claim under the statute. Such acts were entirely consistent with his claim in this proceeding.

We read in 21 C. J., page 1119, Section 122, and page 1120, Section 124, as follows:

"To constitute an 'estoppel *in pais*' there must concur an admission, statement, or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party. There can be no estoppel if either of these elements are wanting. They are each of equal importance. * * It is an essential element of an equitable estoppel that the acts, representations, or silence relied on to create the estoppel must have been willfully intended to lead the party setting up the estoppel to act upon them, or there must have been reasonable grounds to anticipate that he would change his position or in some way act on the faith of the conduct to his detriment."

To hold that the steps taken by Fryer and Stryker in relation to the purchase of the property constituted a substantial compliance with the Bulk Sales Act would be to deprive the statute of its meaning, and defeat the main purpose of the law. There was nothing in the letter from Stryker to plaintiff to inform him that the sale had been consummated and cash paid and a promissory note delivered in full consideration of the property. The statement therein that "his business began yesterday morning" did not indicate that the negotiations had culminated in a complete sale. The language in the letter that "I have agreed to make a sale to C. A. Fryer" points to a future time and the whole context of the communication is to the purport that the sale was not then made. Plaintiff was in no way apprised that the sale had been completed, and the cash and note therefor delivered without the notice required by statute being

given to him, or payment of his notes being provided for in some way.

6. To constitute a waiver, it is essential that there be an existing right, benefit or advantage; a knowledge, actual or constructive, of its existence, and an intention to relinquish it. A man cannot be barred by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights, and intends to waive them must clearly appear. A waiver may be expressed or implied, but in the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose right would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice into the honest belief that such waiver was intended or consented to: 27 R. C. L. 908, § 5; *State* v. *Churchill,* 48 Ark. 426, 445 (3 S. W. 352, 380); *Hotchkiss* v. *Middlekauf,* 96 Va. 649 (32 S. E. 36, 43 L. R. A. 806); *Bank* v. *Maxwell,* 123 Cal. 360 (55 Pac. 980, 69 Am. St. Rep. 64); *Coffee* v. *McGahey,* 181 Mich. 225 (148 N. W. 356, Ann. Cas. 1916C, 923).

As shown by the record in this case the sale mentioned was a statutory fraud upon the rights of the creditor, which our statute makes conclusive as to any creditor and declares the sale void. Under some statutes the presumption of fraud from a violation of the Bulk Sales Act may be overcome by showing that the purchase and sale were made in good faith, etc. It is clear that under our statute this cannot be done as was attempted in the present case. If Fryer saw fit to pursue his own method in making the purchase, and ignore the Bulk Sales Act, of which he is pre-

sumed to have knowledge, he must pay the penalty provided by the statute.

The facts in the case in hand are unlike those in the case of *Rice* v. *West, supra,* in this, that in the latter case Rice, the creditor, was notified and then in effect consented to the sale by saying that he would look wholly to the Wests, the vendors, for payment of his claim, and then waited two years before making any move to repudiate such approval. In the case of *Whitehouse* v. *Nelson,* 43 Wash. 174 (86 Pac. 174), also relied upon by the garnishee, it was held as shown by the syllabus as follows:

"a creditor of a partnership selling its merchandise in bulk without complying with Laws 1902, p. 222, c. 109, regulating the sale of merchandise in bulk, accepted the guaranty of the buyer with knowledge of the facts, and thereafter received payments from the buyer. Held, that the creditor waived any rights he might have under the act."

In *Palo Sav. Bank* v. *Cameron,* 184 Iowa, 183 (168 N. W. 769), it was held that a creditor who consented to a bulk sale, with the understanding that his claim was to be paid by the proceeds of the sale, could not assert that the sale was fraudulent because notice, required by bulk sale law, was not given. In the latter case the vendor notified the bank, a creditor of the intended sale, and the cashier of the bank acquiesced in the sale. It does not follow that the plaintiff in the case at bar who knew nothing about the sale until after it was made and made no agreement in relation thereto, and in no way consented to the sale, acquiesced in the sale. The facts in the case in hand do not come within the rule invoked.

We hold that the testimony does not tend to show that the garnishee, Fryer, complied with the Bulk

Sales Act, nor that Castleman either expressly or impliedly waived his right to assert his claim and satisfy his indebtedness against Stryker by levying upon the property. The evidence does not support the findings of the trial court in those respects. The conclusion of the trial court that the garnishee is entitled to a judgment to the effect that the sale to him on July 17, 1919, of the stock and fixtures of the drug-store is valid, is not sustained by the evidence and the judgment based upon the findings of fact and conclusion of law is erroneous and is reversed.

From the facts admitted in the case and the evidence contained in the record the plaintiff is entitled to have findings made and a judgment entered in his favor to the effect that as to plaintiff, a creditor of Stryker, the sale in question of the stock of drugs, and merchandise and fixtures, was void; and that plaintiff recover of the garnishee, C. O. Fryer, the amount of his judgment against H. F. Stryker, viz., $3,955, together with interest thereon at 6 per cent from November 30, 1920, and for plaintiff's costs and disbursements of these proceedings.

The cause will be remanded to the Circuit Court, with directions to enter judgment in accordance with this opinion as demanded by plaintiff.

REVERSED AND REMANDED, WITH DIRECTIONS.

Mr. Justice BURNETT took no part in consideration of this case.