Argued January 18; affirmed March 6, 1934

# GILLEN-COLE CO. v. FOX & CO.

(29 P. (2d) 1019)

*L. A. Wells,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for appellant.

*MacCormac Snow,* of Portland (W. A. Carter, of Portland, on the brief), for respondent.

ROSSMAN, J. July 18, 1930, the plaintiff instituted this action, alleging that it had sold merchandise of the value of $1,445 to the defendant, Fox & Company, which it averred to be a corporation. July 7, 1931, it recovered judgment. In the latter part of 1928 or some part of 1929, all of the assets of Fox & Company were conveyed to the Plumbing & Heating Sales Corporation which did not require Fox & Company to furnish a list of its creditors and did not notify Fox & Company's creditors of the intended purchase. The plaintiff, believing that our bulk sales law (sections 64-101 to 64-104, Oregon Code 1930) was applicable to that sale, that its provisions were violated by the omissions just mentioned, and that non-compliance with the act rendered the sale void when attacked by Fox & Company's creditors, thus leaving property in the possession of the Plumbing & Heating Sales Corporation subject to writs of attachment and of garnishment, caused such writs to be served upon the Plumbing & Heating Sales Corporation (to which we shall hereafter refer as the garnishee). The garnishee, in its return to the writ of garnishment, stated that it possessed nothing belonging to Fox & Company. Thereafter allegations and interrogatories propounded by the plaintiff were served upon the garnishee, to which it made replies in harmony with its return upon the writ of garnishment. In this manner there arose the

210

following two main issues: (1) Did Fox & Company at the time plaintiff alleges that it sold merchandise to that business (January 1, 1928, to May 1, 1929) possess sufficient corporate character to enable it, as a corporation, to become the plaintiff's debtor; and (2) if it did, was it indebted to the plaintiff December 11, 1929, when the garnishee delivered to Jay H. Fox, Trustee, a stock certificate for 2,000 shares of its own stock as consideration for the assets of Fox & Company which had been conveyed to it. The following, we believe, is a fair statement of the material facts disclosed by the evidence.

In the year 1906 one J. H. Fox, Sr., organized an Oregon corporation entitled Fox & Company with a capitalization of $5,000 divided into 500 shares, of which Fox acquired 410. Later, the capitalization and number of shares were doubled. In 1924 Fox died. Prior to his death he had transferred all of his stock to his stepson, Charles A. Carson. The latter died in 1928, and thereupon his mother, Kate A. Fox, who was the widow of J. H. Fox, Sr., became the owner of Carson's stock which at that time consisted of 920 shares. July 6, 1928, Kate A. Fox and one Jay H. Fox, son of J. H. Fox, Sr., effected an agreement whereby her certificate for 920 shares was transferred to Jay H. Fox who at once surrendered it to the corporation and obtained a new certificate for 920 shares in the name of Jay H. Fox, Trustee. The agreement bound him to hold the new certificate in trust for a period of three years, and at the end of that time to divide the 920 shares among A. C. Carson, Cora J. Conley and himself, but, in the meantime, pay all dividends earned by the stock to Kate A. Fox. Pursuant to the agreement, the old certificate was surrendered and a new one obtained in the name of Jay H. Fox, Trustee. Fox & Company, having failed to file the annual re-

ports required by section 6883, O. L. 1920 (now section 25-237, Oregon Code 1930), with the corporation commissioner for the fiscal years ending June 30, 1921, 1922 and 1923, and also having failed to pay to the state the annual license fees exacted by the same section of our laws for the years just mentioned, the governor of this state, on January 7, 1924, in the exercise of the authority conferred upon him by section 6896, O. L. 1920 (now section 25-250, Oregon Code 1930), issued a proclamation declaring the corporate powers previously conferred upon Fox & Company "inoperative and void". On or prior to January 12, 1929, Fox & Company paid to the corporation commissioner the sum due the state on account of the unpaid license fees for the years ending June 30, 1922 to 1929, inclusive, and on the same day filed with the same official the neglected annual reports, accompanied by an application signed Fox & Co., by Jay H. Fox, its Secy. which, after recounting that the corporation had been dissolved by proclamation of the governor for the nonpayment of license fees, and that "such corporation has done business during such delinquency from June 30, 1922 to January 10, 1929", requested that the corporation be restored to all of its franchises and privileges. Thereupon the corporation commissioner, obedient to the directions of the governor, and pursuant to the provisions of section 6900, O. L. 1920 (now section 25-254, Oregon Code 1930), issued an order restoring Fox & Company "to all of its franchises and privileges".

From 1906, when J. H. Fox, Sr., organized the company, Fox & Company was actively engaged in the plumbing and heating business, maintaining a shop at No. 271 Fifth street, Portland. After the issuance of the governor's dissolution proclamation on January 7, 1924, the same business, without any apparent

change and without interruption, was continued at the aforementioned address. The same name, Fox & Company, appeared upon the store windows, letterheads and bank checks. The bank account was continued in the same name and in the same bank without interruption. The same individuals were in charge of the business after the issuance of the dissolution proclamation as before. Charles Carson was the managing officer until his death. Thereupon Jay H. Fox became the official in charge of the plumbing department, while Frank Urban assumed charge of all heating work performed by Fox & Company. The bookkeeper who kept Fox & Company's books between 1926 and April 15, 1930, testified that in this period of time Jay H. Fox "was secretary, and then he also claimed to be trustee". While the evidence is not entirely clear, nevertheless, it warrants the statement that in this period Urban signed Fox & Company's checks as vice-president, and Jay H. Fox attached his signature under that of Urban's as secretary. In the period between the dissolution proclamation and the order of reinstatement Fox & Company handled a large volume of plumbing and heating contracts aggregating more than $1,000,000.

November 27, 1928, the garnishee, a corporation entitled Plumbing & Heating Sales Corporation, was organized. Some witnesses described it as a merger of several of the larger Portland plumbing and heating concerns. Its president, however, disputed that statement and testified that it was organized by individuals. Be this as it may, all of the equipment and business of several of the larger Portland plumbing and heating companies was transferred to it after its incorporation, including that of Fox & Company. Thereafter these companies ceased operating. The transfer of Fox & Company's assets to the garnishee is

the subject-matter of the attack by the plaintiff. It claims that the vendor was Fox & Company, a corporation, while the garnishee claims that that corporation ceased to exist after the promulgation of the governor's proclamation, and that, hence, the transferror was Jay H. Fox, who, according to the garnishee, was the successor of the dissolved corporation. We shall now review the evidence applicable to this issue. The corporate records of the garnishee record a stock subscription for 2,000 shares of the par value of $20,000, in the name of Jay H. Fox. Payment was made of this subscription in the following manner: An appraisement was made of the assets of Fox & Company consisting of its materials, delivery trucks, machinery and tools whereby it was found that these assets were worth $12,957.44. Virtually none of these assets were owned by Fox & Company January 7, 1924, when the dissolution proclamation was issued. After the appraisement had been made the stock subscription was credited with $12,957.44. In the early part of 1929 Fox & Company paid to the garnishee $7,042.56 cash, as we shall later see, and thus the subscription was fully paid. It is impossible to determine from the record the precise moment when this property passed into the ownership of the garnishee corporation. The record discloses, however, the following: January 7, 1929, the directors of the garnishee corporation directed their attorney to prepare the necessary bills of sale, transferring to the garnishee the assets of the various concerns which were merged with the garnishee and present them at a directors' meeting to be held on January 12, 1929. The record does not indicate whether these directions were obeyed. At any rate, none of these bills of sale were produced at the trial and no one undertook to state the day when any of them were executed or delivered. At the directors'

meeting held on February 25, 1929, Jay H. Fox agreed to complete his inventory on March 1, 1929, and, hence, we may assume that the bill of sale transferring the assets of Fox & Company to the garnishee was not executed until after March 1, 1929. In a moment we shall mention another incident which seems to confirm that inference. January 17, 1929, Fox & Company drew a check against its bank account in the sum of $1,000 in favor of the garnishee and other checks of like kind were drawn January 31, March 23 and April 15 until a total of $7,042.56 had been paid to the garnishee. This cash, together with the properties valued at $12,957.44, aggregated $20,000 and paid the stock subscription. It will be observed that these four checks were drawn after Fox & Company had gained reinstatement. They were signed by Jay H. Fox, secretary, and Frank Urban, vice-president, and were paid out of the bank account of Fox & Company. December 11, 1929, the garnishee issued a stock certificate for 2,000 shares to Jay H. Fox, who, on the same day, returned it with the request that a new certificate be issued in the name of Jay H. Fox, Trustee, which was done. We believe that the right significance will be attached to the incident just mentioned by recalling that on July 6, 1928, Jay H. Fox agreed to hold, as trustee, for a period of three years, a certificate for 920 shares of the stock of Fox & Company for the individuals mentioned in a previous paragraph. It will be observed that the stock certificate was not delivered until December 11, 1929. The evidence does not account for this delay unless we may assume that Fox & Company was tardy in making its inventory and in delivering the bills of sale for the articles conveyed to the garnishee corporation. In explanation of the garnishee's failure to produce the bill of sale, a witness testified that Jay H. Fox, after having resumed possession of it, failed to return it. During some colloquy

the attorney for the garnishee stated that this instrument was signed by Fox individually and not by the corporation; otherwise, the record is silent upon this important phase of the controversy. Each of the certificates of title to the delivery trucks previously owned by Fox & Company and on file in the secretary of state's office, pursuant to 1925 Session Laws 250, bears an endorsement dated February 19, 1929, transferring title to the garnishee, and signed, "Fox & Company by Jay H. Fox". In December, 1928, Fox & Company paid license fees for the year 1929 upon these two trucks. In January, 1929, after Fox & Company had been reinstated to its corporate franchises, the garnishee reimbursed Fox & Company (not Jay H. Fox) for these fees. While all agree that the title to the aforementioned assets passed to the garnishee, Mr. H. C. Hastorf, president of the Plumbing & Heating Sales Corporation, testified that these transfers were made by Jay H. Fox, individually. He swore that he did not know that Fox & Company had ever been a corporation, and that he was ignorant of any stock certificate issued in the name of Jay H. Fox, Trustee. He admitted, however, that before the organization of the Plumbing & Heating Sales Corporation he had purchased from Fox & Company a machine costing several hundred dollars, making payment with a check payable to Fox & Company. All seemingly agree that the transaction between Fox & Company and the garnishee entitled the latter to avail itself of the assets of Fox & Company beginning January 1, 1929, but the garnishee did not remove the articles which it acquired upon a single occasion, but from time to time as it desired. For several months after January 1, 1929, the garnishee maintained the office at No. 271 Fifth street as a branch of its own business. After January 1, 1929, Fox & Company accepted no new contracts but confined its operation to the completion of its existing

ones. In many instances work upon the old contracts was done by the garnishee which made charges therefor against Fox & Company, the reinstated corporation. January 1, 1929, Fox & Company's telephone connection was changed to the name of the garnishee, and all inquiries for new work were directed to the latter.

The plaintiff, which was in the business of selling asbestos, sold to Fox & Company, between January 1, 1928 and May 1, 1929 large quantities of asbestos, and received from time to time payments upon account. It had no actual knowledge of the governor's dissolution proclamation, and apparently was unaware of or uninterested in the legal status of this business unit. On or shortly prior to April 1, 1929, John Gillen, president of the plaintiff, and Jay H. Fox reviewed the account between the two companies and agreed that $1,445 was due to the plaintiff. Shortly afterward Fox & Company drew its check to the plaintiff in that amount of money, the check being signed by Jay H. Fox as secretary, and F. A. Urban, vice-president. Before delivering the check Fox discovered that Fox & Company's bank balance was insufficient to warrant the delivery of the check and thereupon destroyed it. July 18, 1930, the plaintiff instituted an action against Fox & Company for $1,445 depending upon the incident just mentioned as a statement of the account. It recovered judgment.

■ Before proceeding to a consideration of the issues presented by this appeal, it is well to state the basis of the plaintiff's alleged claim against the garnishee. It relies upon the principle that a purchase made in bulk without compliance with the bulk sales law is deemed fraudulent as to the creditors of the vendor, when attacked by them, and subjects the vendee to liability to such creditors for the value of the items received. For an exposition of these principles of law see *Hartwig*

*v. Rushing,* 93 Or. 6 (182 P. 177) ; *Oregon Mill and Grain Co. v. Hyde,* 87 Or. 163 (169 P. 791). The plaintiff concedes in its brief: ''Plaintiff on its part admits that for the purpose of this record it is not a creditor of Jay H. Fox personally and never has been.'' The garnishee freely admits that before it accepted the bills of sale for Fox & Company's assets it did not comply with the bulk sales law. It accompanies this admission, however, with an argument that it made its purchase from Jay H. Fox against whom the plaintiff has no claim.

■ We are now required to determine whether Fox & Company, a corporation, was indebted to the plaintiff December 11, 1929, when the Plumbing & Heating Sales Corporation delivered to Jay H. Fox, Trustee, the certificate for 2,000 shares as consideration for the assets of Fox & Company. The following sections of our bulk sales law, we believe, justify our selection of December 11, 1929 as the crucial date.

Section 64-101, Oregon Code 1930, requires every person who purchases any goods of the kind defined by section 64-104 to demand and receive from his vendor ''at least five days before the consummation of such bargain or purchase, and at least five days before paying or delivering to the vendor any part of the purchase price or consideration therefor'' a written statement containing the names and addresses of the creditors of the vendor as well as the amount due to each. Section 64-102 requires the vendee at least five days before the consummation of the purchase ''and at least five days before paying or delivering to the vendor any part of the purchase price or consideration therefor'', to notify each creditor named in the aforementioned statement of the proposed purchase. It further provides that any vendee who makes such a purchase ''without having first demanded and received from his vendor the statement under oath as

provided in section 64-101, and without having also notified or caused to be notified all of the creditors of the vendor named in such statement, as in this section prescribed, such purchase, sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed fraudulent and void''.

The account books of the plaintiff, their accuracy not being questioned by the garnishee, show the following state of accounts between Fox & Company and the plaintiff between January 1, 1929 and May 15, 1929. (After the latter date no further purchases or payments were made.)

''Fox & Co., Debtor to Gillen-Cole Co.

| | Dr. | Cr. | Debit Balance |
|---|---|---|---|
| Jan. 1, 1929, balance due | | | $1,343.95 |
| Jan. 1, 1929, credit | | $23.25 | |
| Jan. 1, 1929, credit | | .25 | 1,320.45 |
| Jan. 16, 1929, Mdse. | $ .63 | | |
| Jan. 26, 1929, '' | 298.00 | | 1,619.08 |
| Jan. 26, 1929, '' | 87.00 | | |
| Jan. 26, 1929, '' | 71.00 | | |
| Jan. 26, 1929, '' | 18.25 | | |
| Jan. 26, 1929, '' | 35.00 | | 1,830.33 |
| Jan. 28, 1929, '' | 8.25 | | 1,838.58 |
| Jan. 29, 1929, '' | 259.00 | | 2,097.58 |
| Feb. 7, 1929, '' | 17.50 | | |
| Feb. 7, 1929, '' | 12.39 | | 2,127.47 |
| Feb. 11, 1929, Credit | | 7.74 | |
| Feb. 11, 1929, '' | | 5.83 | 2,113.90 |
| Mar. 1, 1929, Mdse. | 321.00 | | |
| Mar. 1, 1929, '' | 7.25 | | 2,442.15 |
| Mar. 4, 1929, '' | 24.80 | | 2,446.95 |
| Mar. 5, 1929, Credit | | 1,243.58 | 1,223.37 |
| Mar. 25, 1929, Mdse. | 55.28 | | |
| Mar. 28, 1929, '' | 26.25 | | |
| Mar. 29, 1929, '' | 54.25 | | 1,359.15 |
| Apr. 30, 1929, | 26.10 | | |
| Apr. 30, 1929, | 54.00 | | 1,439.25 |
| May, 15, 1929, | 5.72 | | 1,445.00'' |

$1,381.67

It is thus seen that after Fox & Company had gained full reinstatement it purchased from the plaintiff $1,381.67 of merchandise and it will also be observed that Fox & Company was possessed of all its corporate powers April 1, 1929, when John Gillen, president of plaintiff-corporation, and Jay H. Fox, after reviewing the state of the account between the two companies, agreed that $1,445 was due to the plaintiff. But the garnishee argues that regardless of the condition of the account between the plaintiff and Fox & Company, the corporation, it (the garnishee) made its purchase from Jay H. Fox, whom it terms successor of the dissolved corporation.

■ Section 25-237, Oregon Code 1930, which, as we have seen, requires corporations to file annual reports with the corporation commissioner and pay annual license fees, provides:

"Any such corporation failing or refusing to render such statement, * * * or to pay such license fee, for more than 20 days after the time above specified, or any corporation, joint stock company, or association doing business in this state contrary to this act, shall be liable to a fine * * *."

Section 25-239, Oregon Code 1930, provides that no corporation which has failed to pay its annual license fee shall be permitted during the period of delinquency to maintain any proceeding in our courts, and requires the corporation commissioner to maintain a list of delinquent corporations. We now quote from this section of our laws:

"While such delinquency shall continue the right of such delinquent corporation, company or association to transact business shall be deemed to be in abeyance * * * but the said delinquency of such corporation or joint stock company or association shall not operate to impair or delay the right of any other person, firm or corporation."

This section further provides that the directors of all corporations which have forfeited their corporate powers through delinquency shall be deemed to be trustees of the corporation and "have full power to settle the affairs of the corporation, joint stock company or association and to maintain or defend any action or proceeding then pending in behalf of or against any of said corporation, joint stock company or association, or to take such legal proceedings as may be necessary to fully settle the affairs of said corporation, joint stock company or association, and such directors or managers or other person appointed by the court as such trustees or trustee may be sued in any of the courts of this state after such forfeiture by any person having a claim against any of said corporations * * *." Section 25-249, Oregon Code 1930, provides:

"If any corporation, organized or formed under, by, or pursuant to the laws of this state * * * shall, for two consecutive years, neglect or refuse to furnish to the secretary of state any statement required to be furnished under any law of this state, or to pay to the state treasurer any license fee required to be paid under any law of this state, it shall be dissolved in the manner hereafter provided, and all powers conferred by law upon such corporation are hereby declared inoperative and void, unless the governor shall, for good cause shown to him, give further time. * * *"

Section 25-251 makes provision for the publication of the governor's dissolution proclamation, and then provides:

"Every such corporation so proclaimed to be dissolved shall continue to exist as a body corporate for the period of five years from the date of such proclamation for the purpose of enforcement against it and its assets of all rights of suit or action, but for no other purpose."

Section 25-252 subjects to a penalty every person "who shall exercise or attempt to exercise any power" under any articles of incorporation revoked by the governor's proclamations. Section 25-254 specifies the conditions under which the governor may reinstate any corporation previously dissolved by proclamation, and then provides:

"In case it shall appear to the satisfaction of the governor that the corporation has been doing no business whatsoever during its delinquency, then, in such cases, the said corporation may be reinstated at any time upon paying to the treasurer of the state of Oregon the amount of the fees and taxes due the state at the time of such delinquency. * * *"

Section 25-221 provides:

"All corporations * * * dissolved by proclamation by the governor, as by law provided, continue to exist as bodies corporate for a period of five years thereafter, if necessary for the purpose of prosecuting or defending any actions, suits or proceedings by or against them, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their corporate business. During such five year period after such dissolution, they shall continue as such bodies corporate for being made parties to, and being sued in any action, suit or proceeding against them, for the recovery of any property, or the enforcement of any remedy against them, or against any property in which such corporations have an interest. * * *"

The garnishee argues that the above sections of our laws, together with the governor's dissolution proclamation, deprived Fox & Company of all its corporate powers January 7, 1924, except those which were necessary to enable its creditors to obtain redress from it, and that subsequent to January 7, 1924, the corporation lacked power to engage in the business

transactions mentioned by the plaintiff. The garnishee, therefore, claims that it was impossible for the plaintiff to have sold Fox & Company, the corporation, anything in 1928, and that we are forced to conclude that the garnishee made its purchases from Jay H. Fox, the individual, and not from Fox & Company, the corporation. In support of its contention the garnishee cites *Deschutes Co. v. Lara*, 127 Or. 57 (270 P. 913); *Klorfine v. Cole*, 121 Or. 76 (252 P. 708, 254 P. 200); *Houston v. Utah Lake, Land, Water & Power Co.*, 55 Utah 393 (187 P. 174, 47 A. L. R. 1282); *Van Landingham v. United Tuna Packers*, 189 Cal. 353 (208 P. 973).

We have carefully examined those decisions but deem it unnecessary to set forth a review of them because we are firmly convinced that the garnishee accepted its conveyance, not from the dissolved corporation, nor from Jay H. Fox, but from Fox & Company after the state had reinvested it with all of its corporate powers. Thus the solution of our present problem finds no assistance in decisions which review the powers, if any, possessed by dissolved corporations. We are convinced that the garnishee secured its conveyance from the reinstated corporation because (1) the parties secured the reinstatement of Fox & Company as a corporation before the consummation of their merger transactions; (2) Fox & Company was reinstated before the inventories and appraisements were made, and it was its property which was inventoried and appraised; (3) Fox & Company, as a reinstated corporation, was actively transacting business, using some of the assets later conveyed to the garnishee, before the bill of sale conveying its assets to the garnishee was executed; (4) Fox & Company was reinstated to its corporate power almost a year before the garnishee delivered the consideration for the conveyance to it of Fox & Company's assets; (5) the stock

certificate was issued in the name of Jay H. Fox, Trustee, apparently pursuant to Fox's agreement with his mother, and not to Fox individually; (6) immediately following Fox & Company's reinstatement the garnishee made remittances to it (for instance, for the license fees for the two trucks) and made charges against it (for instance, for work done by the garnishee at Fox & Company's request); (7) the documents transferring title to the two automobile trucks are signed by Fox & Company which, on February 19, 1929 (the date of execution), was the corporate name of the reinstated corporation; and (8) the explanation of the absence of the bill of sale and the signature thereto being unsatisfactory, we are justified in drawing inferences adverse to the garnishee concerning the signature. We believe that it is proper to impute to the garnishee responsibility, in part, for the reinstatement of Fox & Company because (a) Jay H. Fox, at the time of reinstatement, was an officer of both corporations; and (b) the reinstatement was largely for the benefit of the garnishee.

We deem it unnecessary to determine how Fox & Company, the reinstated corporation, acquired title to the assets of Fox & Company, the dissolved corporation. It is very apparent that the latter disregarded the above sections of our laws and continued to transact business as though no delinquencies had occurred. It suffices to find that the garnishee acquired its title from the reinstated corporation. This disposes of the garnishee's principal contention.

It will be recalled that only $1,381.67 of Fox & Company's purchases from the plaintiff were made after Fox & Company gained reinstatement. A total recovery of $1,445 was awarded. Thus $63.96 purchases were made before reinstatement. It is apparent

that Fox & Company, the reinstated corporation, upon the return to it of its corporate powers ratified what had been done in its behalf concerning the $63.96 purchases.

■ We have not failed to consider the fact that the sales made by the plaintiff in 1929 to Fox & Company were largely pursuant to estimates or bids made by the plaintiff in 1928 while Fox & Company was subject to the dissolution proclamation. However, the evidence warrants the inference that both the plaintiff and Fox & Company deemed the sales as made at the time of delivery and not before. Such being the course of their conduct, we know of no reason why we should disturb it. We have, therefore, regarded the transactions as 1929 business.

While we have not mentioned herein every contention advanced by the garnishee, we have, nevertheless, bestowed careful attention upon all of them. After having read the transcript of evidence, pleadings and brief with painstaking care, it is our opinion that the record contains no error, and that the judgment of the circuit court must be affirmed. Such is the order of this court.

RAND, C. J., CAMPBELL, BEAN, KELLY, BELT and BAILEY, JJ., concur.